## DAVIS v. PATRICK.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF NEBRASKA.

Argued April 14, 1887. — Decided May 23, 1887.

Where a bill of exceptions is signed after the beginning of the term of this court when the writ of error is returnable, and during a term of the Circuit Court succeeding that at which the case was tried, but was seasonably submitted to the judge for signature, and the delay was caused by the judge and not by the plaintiff in error, the bill of exceptions will not be stricken out.

A written instrument between A and B, held to constitute A the creditor of B, and not the partner, and not to make A liable to third parties on contracts made by B.

In a suit by a third party against A to make him liable on such a contract, where the written instrument is in evidence, an instruction to the jury is erroneous, which overrides the legal purport of the instrument.

An instruction to a jury, based upon a theory unsupported by evidence, and upon which theory the jury may have rendered the verdict, is erroneous.

THIS was an action at law brought in a court of the state of Nebraska, on the 24th of November, 1880, and removed, on the petition of the defendant, into the Circuit Court of the United States for the District of Nebraska, by Algernon S. Patrick against Erwin Davis, to recover certain sums of money.

There were two causes of action set forth in the petition by which the suit was commenced. Under the first one the plaintiff claimed to recover $2677.90, with interest from September 3, 1877, and $8806.92, with interest from February 7, 1877. No question arose here as to the first cause of action. The second cause of action alleged in the petition was, that, on or about the 15th of November, 1873, the plaintiff was employed by the defendant to transport silver ore from the Flagstaff mine, in Utah Territory, to the furnaces at Sandy, in that territory, for a certain hire and reward then agreed upon therefor between the parties; that the plaintiff continued in that employment until on or about the 20th of November, 1875, at which date the account of services was settled and stated from the books of the defendant, and there was then found to be due to the plaintiff $26,539.54; and judgment was prayed for that sum, with interest from November 20, 1875. The answer of the defendant to the second cause of action was a general denial. At the trial before a jury, there was a verdict for the plaintiff, on the 20th of June, 1883, for $50,015.72, and a judgment accordingly, to review which the defendant brought a writ of error.

It was not denied that the services were rendered. The question at issue was whether they were rendered for Davis, or for an English company, owners of the mine, and the relations of Davis to the mine depended in part upon the construc-

tion of the contract between him and the company set forth at
length below in the opinion of the court.   M. T. Patrick, who
employed Algernon Patrick, was in charge of the mine under
the J. N. H. Patrick named in this contract, and also in the
power of attorney which follows that contract in the opinion
of the court, to both of which reference is made for the better
understanding of the case.

The plaintiff moved to strike the bill of exceptions from the
record, for the reason that it was not allowed and signed in
proper time.   On the day the judgment was entered, June 25,
1883, a written stipulation between the parties was filed, pro-
viding that the defendant should have forty days to prepare and
present to the court his bill of exceptions, and that the plaintiff
should have twenty days thereafter to examine the same and
make any suggestions of omission, addition or correction there-
to.   On the 16th of August, 1883, the writ of error was
allowed and filed, a supersedeas bond, duly-approved, was
filed, and a citation was duly issued, the writ of error being
returnable at October Term, 1883.   On the 14th of September,
1883, the following written stipulation, entitled in the cause,
was made between the parties: "The bill of exceptions in this
case having been partially settled by his Honor, Judge Dundy,
and he desiring to be absent from the district for a month or
more, and being unable to settle the remainder of the bill be-
fore leaving, it is hereby stipulated that the same may be set-
tled and signed at any time before November 1, 1883, and that
the record may be filed in the Supreme Court by the 1st of
December, 1883, with the same effect as if filed at the begin-
ning of the October Term."   The term of the court at which
the trial was had and the judgment rendered adjourned *sine
die* on the 20th of October, 1883.   The succeeding term of
the court began on the 12th of November, 1883.   The bill of
exceptions was allowed and signed by the judge on the 8th
of December, 1883, and was filed on the same day.   The
record was filed in this court on the 26th of December, 1883.

*Mr. Joseph H. Choate, Mr. J. M. Woolworth,* and *Mr.
Henry A. Root* for plaintiff in error.

*Mr. John F. Dillon* and *Mr. John L. Webster* for defendant in error.

The bill of exceptions being signed after the time when the writ of error was made returnable, and after the adjournment of the term at which the case was tried, and during a succeeding term of the court, and without consent of parties cannot be considered. *Walton* v. *United States*, 9 Wheat. 651; *Coughlin* v. *District of Columbia*, 106 U. S. 7; *Müller* v. *Ehlers*, 91 U. S. 249; *Hunnicutt* v. *Peyton*, 102 U. S. 333; *Kirby* v. *Bowland*, 69 Ind. 290; *Sheppard* v. *Wilson*, 6 How. 260. The motion must be determined by the record. Affidavits are not receivable. *Claggett* v. *Gray*, 1 Iowa, 19, 23; *Powers* v. *Wright*, Minor (Ala.), 66.

Under the contract J. N. H. Patrick became the agent of Davis. Under the contract the Flagstaff Company was put out of possession of the mine, and J. N. H. Patrick was put in possession to manage it for the primary use and benefit of Davis. The company had no control over J. N. H. Patrick or his agents or employes. The company could not remove him from his management. His appointment was "sole, exclusive and irrevocable" by the company. Erwin Davis alone had the power to remove him and to appoint a new manager. J. N. H. Patrick was subject to the control and direction of Davis, and not of the Flagstaff Company.

To make J. N. H. Patrick the agent or servant of the Flagstaff Company, the company must have more than the mere right of selection. It must have had the right of control over J. N. H. Patrick, which it did not have under the contract, having by that instrument expressly surrendered it. "Something more than the mere right of selection on the part of the principal is essential to that relation." *Boswell* v. *Laird*, 8 Cal. 469 [*S. C.* 68 Am. Dec. 345]. The liability of a principal is based upon his power to control the agent or servant or to discharge him for misconduct. *Ohio & Miss. Railroad* v. *Davis*, 23 Ind. 553 [*S. C.* 85 Am. Dec. 477]; *Maximilian* v. *New York*, 62 N. Y. 160; *Hant* v. *New York*, 70 N. Y. 459. "The rule of *respondeat superior* is based upon the

right which the employer has to select his servants, to discharge them if not competent, or skilful, or well behaved, and to direct or control them while in his employ." *Maximilian* v. *Mayor*, 62 N. Y. 163. "The application of the rule referred to in this case depends upon the question whether the power to discharge, direct and control existed, and is the main point now to be determined." *Ham* v. *Mayor*, 70 N. Y. 462.

By the contract J. N. H. Patrick did not receive his appointment from the company alone. It is apparent that his appointment was dictated by Davis, and for his primary benefit, and both unite in the contract as parties to it. If, however, J. N. H. Patrick had been appointed by the Flagstaff Company only, still that fact would not make him the agent of the company. *Buttrick* v. *Lowell*, 1 Allen, 172 [*S. C.* 79 Am. Dec. 721]; *Walcott* v. *Swampscott*, 1 Allen, 101; *Barney* v. *Lowell*, 98 Mass. 570; *Wheeler* v. *Cincinnati*, 19 Ohio St. 19.

No provision was made in the contract for the payment of the salary of him or of his employes. Even if it had been provided that the company should pay Patrick's salary, it would not have made him the agent of the company. *Hafford* v. *New Bedford*, 16 Gray, 297; *Fisher* v. *Boston*, 104 Mass. 87; *Barnes* v. *District of Columbia*, 91 U. S. 540.

Davis owned the ores hauled by the plaintiff, and this makes an incontestable and distinct ground of liability to the plaintiff. And further, he was a mortgagee or creditor in possession, and as such is liable to the plaintiff. *Benham* v. *Rowe*, 2 Cal. 387 [*S. C.* 56 Am. Dec. 342]. He was bound to see that the expenses of operating the mine were paid, as a mortgagee in possession is entitled to compensation for repairs made and for outlays for the preservation of the property. *Gillis* v. *Martin*, 2 Devereux Eq. 470; *Hardy* v. *Reeves*, 4 Ves. 466; *Schaeffer* v. *Chambers*, 2 Halstead Ch. 548; *Sanders* v. *Wilson*, 34 Vt. 318; *Barnett* v. *Nelson*, 54 Iowa, 41; *Dewey* v. *Brownell*, 54 Vt. 441; *Iron Mountain, &c., Railroad* v. *Johnson*, 119 U. S. 608.

Mr. Justice BLATCHFORD, after stating the case, delivered the opinion of the court.

The first point taken is, that, as the bill of exceptions was signed after the beginning of the term of this court at which the writ of error was made returnable, and during a term of the Circuit Court succeeding that at which the case was tried, it cannot be considered. But we are of opinion that this objection cannot avail. The stipulation of September 14, 1883, shows, on its face, that the matter of the settlement of the bill of exceptions had been submitted to the judge, and that the delay was agreed to for the convenience of the judge. The purport of the stipulation is, that the bill had, with the knowledge of the plaintiff, been tendered to the judge for signature. This being so, the consent of the parties that the judge might delay the settlement and signature did not have the effect to cause any more delay than would have occurred if the judge had delayed the matter without such consent. The defendant was not to blame for the delay beyond the time named in the stipulation. He appears to have done all he could to procure the settlement of and signature to the bill, and he cannot be prejudiced by the delay of the judge. The bill of exceptions shows, on its face, that the several exceptions taken by the defendant were taken and allowed at the trial and before the verdict. The cases cited by the plaintiff, *Walton* v. *United States*, 9 Wheat. 651; *Ex parte Bradstreet* v. *Thomas*, 4 Pet. 102; *Sheppard* v. *Wilson*, 6 How. 260, 275; *Müller* v. *Ehlers*, 91 U. S. 249; and *Coughlin* v. *District of Columbia*, 106 U. S. 7, do not contain anything in conflict with this ruling. It is supported by *United States* v. *Breitling*, 20 How. 252. The motion to strike out the bill of exceptions is therefore denied.

The claim of the plaintiff is, that he was employed, not by the defendant personally, but by the plaintiff's brother, M. T. Patrick. The defendant, not disputing the rendering of the services or their value, denies that they were rendered for him, and denies that M. T. Patrick was his agent. He contends that the services were rendered to the Flagstaff Silver Mining Company of Utah, Limited, an English corporation; that M. T. Patrick was the agent of that company; and that, as such, he employed the plaintiff. The question of this agency was the principal question in dispute at the trial.

The Flagstaff mine was owned in 1870 by certain parties in Utah Territory, who sold it, through the defendant, to the Flagstaff Silver Mining Company. That company continued to own and operate the mine until December, 1883, when J. N. H. Patrick, another brother of the plaintiff, went from New York to London, the defendant being then in London. On the day that J. N. H. Patrick arrived in London the company received a telegram from one Maxwell, superintendent of its mine in Utah, stating that the mine was attached for debt. It applied to the defendant for a loan of money, whereupon the following written agreement was made between the company and the defendant, on the 16th of December, 1873:

"This agreement, made this 16th day of December, one thousand eight hundred and seventy-three, between the Flagstaff Silver Mining Company of Utah, Limited, of the one part, and Erwin Davis, now of the city of London, of the other part.

"Whereas the said Erwin Davis, on the 12th of June, one thousand eight hundred and seventy-three, advanced the said company the sum of five thousand pounds, at the rate of six per cent per annum interest;

"And whereas the said sum of five thousand pounds is now due and owing to said Erwin Davis, with the interest thereon;

"And whereas it is necessary that the said company should have a further advance of money for the purpose of continuing the development of their mine, and for carrying on their business;

"And whereas the said Erwin Davis doth hereby agree to advance to said company at such time or times as may be necessary for the purpose aforesaid, not to exceed in amount the sum of ten thousand pounds, in addition to the said sum of five thousand pounds already advanced;

"And whereas the said company has, at different times and dates, sold to the said Erwin Davis five thousand one hundred and ninety-five tons of ore, which said ore the said company agreed to deliver to the said Erwin Davis at the ore-house of said company, free of cost;

" And whereas they have so delivered two hundred tons of said ore, leaving a balance of four thousand nine hundred and ninety-five tons yet undelivered, the cost of said ore having all been paid to said company by said Erwin Davis;

" Now, therefore, it is agreed between the parties hereto, in consideration of the said sum of money now due and owing to said Erwin Davis by the said company, and the further advances to be made by the said Erwin Davis, as herein agreed, and in further consideration of the premises heretofore stated, J. N. H. Patrick, of Salt Lake, is appointed manager of all the property of said company in Utah, and the said J. N. H. Patrick, as said manager, by himself or his agents, is to have the exclusive, sole, and irrevocable (except as hereinafter mentioned) management of all the said company's properties in Utah, and of all the business in Utah of the said company in mining and smelting silver and other ores, and any and all other lawful business, and, as such manager aforesaid of the business and properties aforesaid, he is hereby authorized and empowered to do, execute, and perform any and all acts, deeds, matters, or things whatsoever which ought to be done, executed, and performed, or which, in the opinion of the said J. N. H. Patrick, ought to be done, executed, or performed, in or about the concerns, engagements, or business of the said company, of every nature and kind whatsoever, as fully and effectually as it could do if the said company were actually present, hereby ratifying and confirming whatsoever the said J. N. H. Patrick may do in and about the company's concerns and business; and it is hereby further agreed, that the said J. N. H. Patrick, or his agents, in furtherance of the purposes aforesaid, is to enter into the possession of all the said company's properties in Utah necessary for conducting the business and management thereof as aforesaid, until such time as, out of the profits of the workings of the properties aforesaid, he, the said J. N. H. Patrick, has repaid to Erwin Davis the said sum of five thousand pounds, with the interest thereon, and also has repaid to him all and every sums of money he may have advanced to the said company under this agreement, together with interest thereon at the rate of six pounds

per centum per annum, and also until he has mined and delivered to Erwin Davis all the ores sold him by said company, as per agreement herein stated, and also until he has smelted the ore so mined and delivered to him, in the said company's furnaces, according to the terms and agreement dated the 12th day of September last, made between the said company and Erwin Davis, and when he, the said J. N. H. Patrick, has so paid to him all the moneys so advanced said company and interest as aforesaid, mined and delivered the ores so sold and contracted, and smelted said ores, and done and performed all the agreements herein contained, then the said J. N. H. Patrick may resign the management aforesaid, and shall, upon being called upon so to do, deliver to said company all of said properties in as good condition as possible after the necessary workings, mining, and smelting, as herein agreed to be done and performed. And it is hereby further agreed, that the said mine is to be worked and mined by the said J. N. H. Patrick in a proper and minerlike manner, and that the said business of said company is to be managed with economy and for the best interests of the parties hereto; that a statement of all the business transactions, with accounts of the same, showing all moneys received and the source from whence so received, and all moneys paid out, with the proper vouchers therefor, is to be made monthly to said company, at their office at the city of London, by the said J. N. H. Patrick. And it is hereby further agreed, that nothing herein contained shall be construed to defeat or impair any legal rights the said Erwin Davis may have for the moneys now due said Erwin Davis, or so to be advanced by said Erwin Davis, or for the delivery of the ores so sold said Erwin Davis. And it is hereby further agreed, between the parties hereto, that if, at any time, the said Erwin Davis becomes dissatisfied with the management of the business and the property in Utah, he may suspend and remove the manager and appoint another manager in his place, with any or all rights, powers, or authority delegated under this agreement; and, should the said Erwin Davis proceed to act upon the powers contained in the last preceding clause, he will consult with the board of directors of the said company, as to the new manager from time to time to be appointed.

"In witness whereof the said parties hereto have set their hands the day and year first above written.

"J. R. GOLE,

"*Secretary, for and on behalf of the Flagstaff Silver Mining Company of Utah, Limited.*

"ERWIN DAVIS.

"Witness to the foregoing signatures —

"E. JOHNSON."

At the same time, and as a part of the same arrangement, the company, on the 16th of December, 1883, executed to J. N. H. Patrick the following power of attorney:

"Know all men by these presents, that we, The Flagstaff Silver Mining Company, do hereby constitute and appoint John Nelson Hays Patrick, of Salt Lake City, Utah, in the United States of America, their true and lawful attorney, to take possession of and carry on and manage the workings of the mine or mines belonging to the said company, and for that purpose to appoint officers, clerks, workmen, and others, and to remove them and appoint others in their place, and to pay and allow to the persons to be so employed such salaries, wages, or other remuneration as he shall think fit; also, to ask, demand, sue for, recover, and receive of and from all persons and bodies politic or corporate, to pay, transfer, and deliver the same, respectively, all sums of money, stocks, funds, interest, dividends, debts, dues, effects, and things now owing or payable to the said company, or which shall at any time or times hereafter be owing or belong to the said company by virtue of any security or upon any balance of accounts or otherwise howsoever, or of any part thereof, respectively; to give, sign, and execute receipts, releases, and other discharges for the same, respectively, and on non-payment, non-transfer, or non-delivery thereof, or of any part thereof, respectively, to commence, carry on, and prosecute any action, suit, or other proceeding whatsoever for recovering and compelling the payment, transfer, or delivery thereof, respectively; also, to settle, adjust, compound, submit to arbitration

and compromise all actions, suits, accounts, reckonings, claims, and demands whatsoever which now are or hereafter shall or may be pending between the said company and any person or persons whomsoever, in such manner and in all respects as the said John Nelson Hays Patrick shall think fit; also, to sell and convert into money any goods, effects, or things which now belong or at any time or times hereafter shall belong to said company, and, also, to enter into, make, sign, seal, execute, and deliver, acknowledge, and perform any contract, agreement, writing, or thing that may, in the opinion of him, the said John Nelson Hays Patrick, be necessary or proper to be entered into, made, or signed, sealed, executed, delivered, acknowledged, or performed for effectuating the purposes aforesaid, or any of them, and, for all or any of the purposes of these presents, to use the name of the said company, and generally to do, execute, and perform any other act, deed, matter, or thing whatsoever which ought to be done, executed, or performed, or which, in the opinion of the said John Nelson Hays Patrick, ought to be done, executed, or performed, in or about the concerns, engagements, and business of the said company, of every nature and kind whatsoever, as fully and effectually as it could do if the said company were actually present; and the said company do hereby agree to ratify and confirm all and whatsoever the said John Nelson Hays Patrick shall lawfully do or cause to be done in or about the premises, by virtue of these presents.

"In witness whereof the said company have hereunto affixed their official seal this sixteenth day of December, one thousand eight hundred and seventy-three.

"A. MALES, 　　⎫
"RUSSELL GOLE, ⎬ *Directors.*
　　　　　　　　⎭

"Witness:　　　　　"J. R. GOLE, *Secretary.*

"E. JOHNSON,
　　　5 & 6 *G't Winchester St., London.*"

J. N. H. Patrick testifies that, in consequence of the arrangement made between the company and the defendant, though prior to the actual execution of the papers of the

16th of December, 1883, he, J. N. H. Patrick, telegraphed, from London, to M. T. Patrick, in the United States, instruc- tions to take charge of the mine, directing him to stave off all debts he could, and saying that money would be forwarded to him to keep the mine running, and that full instructions had been written to him; and that the company telegraphed to Maxwell to turn the mine over to M. T. Patrick. J. N. H. Patrick testifies that the defendant did not send any such telegram to M. T. Patrick.

On the other hand, M. T. Patrick testifies that he received a telegram from London with the name of the defendant signed to it, instructing him to go to Utah and take charge of the mine; that that was the authority upon which he did so; that he received possession of the mine from Maxwell; and that he employed the plaintiff to do the hauling of the ore.

J. N. H. Patrick testifies, that, when the news of the finan- cial difficulties of the company arrived in London, and the company applied to the defendant for a further loan of money, he refused to make it unless the company would give him the management of the mine; and that the company de- clined to do so, but agreed to make the arrangement evidenced by the papers of December 16, 1873.

The purport and bearing of these papers is very plain, on their face. The company owed the defendant £5000, with interest at the rate of six per cent per annum, for that amount advanced by him to it on the 12th of June, 1873. A further advance of money was necessary to enable it to carry on its business. The defendant agrees to advance to it not to exceed £10,000, in addition to the £5000 already advanced. It had previously sold to him a quantity of ore, which it had agreed to deliver to him at its ore-house, free of cost, the cost of it having all been paid to the company by the defendant, and a balance of 4995 tons being yet undelivered. In consideration of the premises, the company appoints J. N. H. Patrick mana- ger of all its property in Utah, he, by himself or his agents, to have the exclusive and irrevocable management, except as thereinafter mentioned, of all its properties in Utah, and of all its mining and smelting business there. He is to conduct and

manage the above business until such time as, out of the profits of the working of the properties, he has repaid to the defendant the £5000 and interest, and also all moneys the defendant may advance to the company under the agreement, with interest, and also until he has mined and delivered to the defendant all the ore so sold to him by the company, as stated in the agreement, and also until he has smelted in the furnaces of the company the ore so to be mined and delivered to the defendant, according to the terms and agreement of September 12, 1873, made between the company and the defendant. When all this is done, J. N. H. Patrick may resign the management. He is to work the mine in a proper manner, and manage the business of the company with economy, and for the best interests of the parties to the agreement, and is to render a monthly statement, with vouchers, to the company at London. If, at any time, the defendant becomes dissatisfied with the management of the business and the property in Utah, he may suspend and remove the manager and appoint another manager in his place, with any or all rights, powers, or authority delegated under the agreement, and, should the defendant proceed to act upon such power of suspension and removal, he is to consult with the board of directors of the company as to the new manager to be appointed. The power of attorney from the company to J. N. H. Patrick appoints him to be the attorney of the company to take possession of and carry on the mine, and for that purpose to appoint workmen and others, and to pay and allow them such remuneration as he shall think fit.

The relation between the defendant and the company was strictly that of creditor and debtor. The agreement of December 16, 1873, in connection with the power of attorney, was simply a method of securing the defendant, as a creditor of the company, for past and future advances, and to insure the delivery of the ore which he had bought and paid for. The irrevocable character of the appointment of J. N. H. Patrick as manager, with the power given to the defendant to suspend and remove him, and to appoint another manager in his place, on consultation with the board of directors of the

company, was an incident of the security to the defendant, and a means of having the operation of the mine continued until the debt to him should be discharged. Any new manager to be appointed was to have the rights, powers, and authority delegated to J. N. H. Patrick under the agreement, and none others. The agreement did not in any manner make the defendant a partner with the company, or with J. N. H. Patrick, or make J. N. H. Patrick the agent of the defendant in managing the mine, so as to make the defendant responsible for any contract entered into by J. N. H. Patrick. The company continued to be the owner of the mine, operating it through J. N. H. Patrick, as its manager, agent, and attorney, and responsible for his contracts, as such. *Cox* v. *Hickman*, 8 H. L. Cas. 268; *Mollwo* v. *Court of Wards*, L. R. 4 P. C. App. 419; *Cassidy* v. *Hall*, 97 N. Y. 159.

This being the proper legal view of the papers of December 16, 1883, the defendant, at the trial, asked the court to charge the jury as follows: "The jury are instructed that the contract between the Flagstaff Mining Company and the defendant, and the power of attorney from the company to J. N. H. Patrick, constituted J. N. H. Patrick the sole manager and controller of the mine, for the time being, as the general agent and representative of the company, and that the attitude of Erwin Davis, as a creditor of the company, to whom J. N. H. Patrick was bound to pay all profits of working the mine, did not render him personally liable for any of the expenses incurred by J. N. H. Patrick while working and operating the mine pursuant to the agreement and situation created by the contract and power of attorney. The legal effect of the contract and power of attorney was to give to the defendant, Davis, security for the indebtedness of the company to him, and was not in any way to render him liable personally for any debts of the company incurred in working the mine, in hauling ores or otherwise." The court gave this instruction with the following qualification and comment: "Of course that is to be taken in connection with the other instructions, if the original transaction between J. N. H. Patrick and the Flagstaff company was what it purports to be; but if Davis

was the real party, then he is liable here." The defendant excepted to the giving of this qualification and comment.

This qualification and comment put aside entirely the legal effect of the agreement and the power of attorney, as those papers were construed by the court, and which construction was the correct one, and left it to the jury to determine what was the relation of the defendant to the business, and to ignore entirely the legal effect of the instruments. There was nothing ambiguous in the terms of the agreement, and there is nothing in the record to show that it did not truly represent the actual relations between the company and the defendant, and the actual circumstances of the connection of the defendant and of J. N. H. Patrick with the enterprise.

In another portion of the instruction of the court to the jury, it stated to the jury, under the exception of the defendant, that if they should conclude "that Davis was the Flagstaff Mining Company, operating the mine for his own use and benefit, then his liability is fixed and he cannot escape it. That is plaintiff's theory, and it may be a reasonable or an unreasonable one. If the testimony convinces you that the plaintiff's theory is correct, then you are justified in finding a verdict for the full amount claimed for these services, if they are according to contract price." This was substantially an instruction to the jury that they might conclude, from the terms of the agreement, that the defendant was the company, and that, if they should conclude that the agreement made J. N. H. Patrick the agent of the defendant, and not the agent of the company, in the management of the mine, then the defendant was liable to the plaintiff. This instruction overrode the legal purport of the agreement and was erroneous.

The court further instructed the jury as follows, under the exception of the defendant: "There is another view of the case, in which there may possibly be a liability. It is claimed that the ores hauled by Patrick were really the ores that belonged to Davis, independent of any person operating the mines. If that be so, and Patrick undertook to haul them for the defendant, by direction of the superintendent of the

mines, representing Mr. Davis, the defendant would be liable. If the ores belonged to him, then he would be required to pay for the hauling, if his agent represented him in the matter of making the alleged contract. If you are satisfied that the mines were operated by Davis, that he received the profits arising from the same, or that the ores belonged to Davis, and Patrick was employed by a representative of Davis to haul the same, then Davis would be liable for the hauling of the same." In this instruction, the theory of the liability of the defendant was, that he really owned the ores which were hauled by the plaintiff, and that J. N. H. Patrick represented the defendant in procuring the plaintiff to haul them. This assumed liability of the defendant was not made to rest upon any connection which the defendant had with the management of the mine, or upon the written agreement between the defendant and the company, or the relation created by that agreement. But we do not understand the testimony of M. T. Patrick, or any other testimony in the case, as showing that the ores hauled belonged to the defendant, independently of his relations with the company, created by the written agreement; nor that the testimony purports to show anything as to the ownership of the ores by the defendant, other than that the ores taken from the mine belonged to the defendant as the operator of the mine for the company. The testimony of M. T. Patrick shows that the proceeds of all the ores mined and hauled by A. S. Patrick to the smelting furnace, and smelted and sold, were deposited in bank in the name of the company; that the books and accounts were all kept in the name of the company; and that the mine was run in the name of the company. The entire testimony is to the effect that the ores taken from the mine did not belong to the defendant, independently of the fact that he was operating the mine for the company. J. N. H. Patrick testifies as follows: "There were no ores delivered to Davis during my management; all ores mined and hauled by plaintiff were smelted and sold, and the money put in the bank to the credit of the company, and went to pay expenses of running the mine." It does not appear that any ore taken from the mine was de-

livered to the defendant as a portion of the ore referred to in the written agreement as purchased by him from the company, or that that portion of the agreement was ever carried into execution. The last instruction quoted was, therefore, based upon an erroneous theory, unsupported by evidence, and the jury may have rendered its verdict upon this erroneous theory, ignoring the view that the defendant was the company. This second erroneous instruction may, therefore, have misled the jury to the injury of the defendant.

*For these errors, the judgment is reversed and the case is remanded to the Circuit Court, with a direction to award a new trial.*