### In re EXPOSITION CATERING CO., Inc.

(Circuit Court of Appeals, Second Circuit. October 31, 1922.)

### No. 53.

1. Bankruptcy ☞440—Order substituting attorney and denying right to funds held reviewable by appeal as "controversy arising in bankruptcy"; "proceeding in bankruptcy."

An order substituting an attorney for the alleged bankrupt is made in a "controversy arising in a bankruptcy proceeding," under Bankruptcy Act, § 24a (Comp. St. § 9608), reviewable by appeal, as distinguished from a "proceeding in bankruptcy," within section 24b, reviewable on petition to revise, and where so much of the order confirming the report of the special master as was involved in the controversy falls under section 24a, petitions to revise the two orders will be dismissed, and the orders reviewed on appeal, though other portions of the confirming order would fall under section 24b.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Bankruptcy Proceedings; Second Series, Controversy Arising in Bankruptcy Proceedings.]

2. Sales ☞149—Bill of sale of personal property does not limit contract transferring money also.

Where a corporation made a contract to sell its property at its amusement park, its entire capital stock, and all its assets of every kind and

<hr>

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

nature, the subsequent giving of a bill of sale covering the personal property at the park did not limit the prior contract to that property, so as to exclude therefrom the money owned by the corporation, since the bill of sale was appropriate for the transfer of the property, but not for the transfer of the money.

3. Attorney and client ☞187—Agreement with bankrupt's president cannot affect right to assets of purchaser.

An agreement between the president of a corporation against whom bankruptcy proceedings were instituted, and its attorney, that the attorney should be compensated out of the alleged bankrupt's estate, could not affect the rights of the purchaser of all the assets of the company under a contract made with the assistance of the attorney and not preserving his rights.

4. Attorney and client ☞187—Attorney for bankrupt's president has no lien on its assets.

An attorney, who represented a corporation in bankruptcy proceedings against it under employment by its president, who personally paid him a fee, and had been allowed no compensation by the bankruptcy court for his services to the company, has no lien on the assets in custody of the bankruptcy court as against a purchaser thereof.

5. Attorney and client ☞186—Agreement to sell assets, made with attorney's knowledge, defeats attorney's right to compensation therefrom.

Even if an attorney for the alleged bankrupt was entitled to a lien on the estate assets for his services, his right thereto was defeated by a contract for the purchase of all the assets of the alleged bankrupt, made with the assistance of the attorney, which expressly stated the sale was to be free and clear of all debts, and in which the attorney made no attempt to preserve his lien.

6. Attorney and client ☞75(1)—Attorney can be substituted at will, where there is no lien, and no services have been rendered.

Where there is no lien for an attorney's services, and the facts show that no services had been rendered to the client for which the attorney could recover, the substitution of attorneys can be made at the will of the client.

Petition to Revise and Appeal from Order of the District Court of the United States for the Southern District of New York.

In the matter of the Exposition Catering Company, Inc., alleged bankrupts. After orders were entered substituting Terry Parker as attorney for the alleged bankrupt, instead of Saul S. Myers, and confirming the report of the special master directing the receiver to pay the balance in his hands to the president of the alleged bankrupt, Saul S. Myers petitions to revise and appeals. Petitions dismissed, and orders affirmed on appeals.

Petition to revise and appeals by Saul S. Myers from two orders of the District Court for the Southern District of New York, dated April 10, 1922. These two methods of review were taken to avoid the danger of technical error in selecting the wrong method. The petitions and appeals have been consolidated and are presented on one record.

One of the orders under review ordered the substitution of Terry Parker, as attorney for the alleged bankrupt, instead of Saul S. Myers. The other order confirmed the report of a special master and, inter alia, ordered the receiver in bankruptcy to pay $804.60 (the balance in his hands after deducting the expenses of the reference to the special master) "in a check made payable to George Rilling, as president of the Exposition Catering Company, Inc., to the Exposition Catering Company, Inc., the alleged bankrupt."

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Saul S. Myers and Charles H. Tuttle, both of New York City, for, appellant.

Terry Parker, of New York City, for respondent.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

MAYER, Circuit Judge (after stating the facts as above). [1] As the facts infra will indicate, we think the order of substitution was made in a "controversy arising in a bankruptcy proceeding" under section 24a (Comp. St. § 9608), as distinguished from a "proceeding in bankruptcy" within section 24b. While part of the other order would fall under section 24b, so much thereof as is concerned in the present controversy falls under section 24a. We shall therefore dismiss the petitions to revise and entertain the appeals. In re Nagel (C. C. A.) 278 Fed. 105; In the Matter of B. & R. Glove Corp. (C. C. A.) 279 Fed. 372.

The record is voluminous, but the essential facts are few and simple. The history of the previous relations of and litigation between the Bronx Exposition Company (hereinafter called the Bronx Co.) and the Exposition Catering Company (hereinafter called the Exposition Co.), the alleged bankrupt, are wholly immaterial to the present controversy. A petition in involuntary bankruptcy was filed on May 27, 1921, against Exposition Co. by Bronx Co., one Berg, and one Spahn, and a receiver was appointed ex parte by the District Court. A few days later, Mr. Myers was retained on behalf of Exposition Co., through its president, Mr. Ritchey, who paid Mr. Myers $1,000. This sum, according to Mr. Myers, was not paid by Exposition Co., but by Mr. Ritchey "out of his own funds, for the purpose of protecting his stock interest in the Exposition Catering Company, Inc."

Of course, Exposition Co., the alleged bankrupt, could not pay any retainer to Mr. Myers, after the petition in bankruptcy had been filed. Its property was then in custodia legis. If the bankruptcy proceeding had followed the usual routine, an award of compensation to Mr. Myers, as attorney for the alleged bankrupt, would have rested entirely in the discretion of the bankruptcy court, and that court could award something or nothing within the limits of judicial discretion. On June 6, 1921, on behalf of Exposition Co., Mr. Myers interposed an answer to the petition, and, as the result of a motion made by Mr. Myers, the cause was set for trial for June 14, 1921.

Before the cause came on to be tried, Mr. Clarence J. Hand, attorney for Bronx Co. and for Starlight Amusement Company, and Mr. Myers opened up negotiations for settlement—it is not important who started these negotiations—and on June 16, 1921, a written agreement was entered into between "Starlight Amusement Company, Inc.," on the one hand, and "Daniel P. Ritchey and Exposition Catering Company, Inc.," on the other. The evidence is that Mr. Myers actively participated in this agreement and was fully aware of its contents.

The agreement, in substance, was that Starlight Co. was to purchase and Exposition Co. was to sell all of the latter's property of every kind, as well as the corporate stock, for $60,000, part cash, part notes. Subsequently, when the transaction was closed, Starlight Co.

paid $50,000, instead of $60,000, part cash and part notes. The closing was set for July 15, 1921, the trial having meanwhile been adjourned. Mr. Ritchey was the actual owner of all of the stock of Exposition Co., and hence was a party to the agreement.

The written agreement, which took the form of a letter from Starlight Co. and an acceptance by Ritchey and Exposition Co., could not be more explicit. It provided:

"Our interest in the Starlight Amusement Park, located at East 177th street, New York City, is such that we would be interested in acquiring the food and restaurant privileges which we understand you now own and operate under an agreement of lease with the Bronx Exposition, Inc., dated on or about June, 1917.

"We further understand that you are willing to sell your lease and all the buildings, equipment, and other property located at the park, put there under said lease by you or by persons or corporations acting under you, for the operation of the concession covered by that lease, and also that you are willing to turn over the entire capital stock of the Exposition Catering Company, Inc., and *all its assets of every nature, free and clear*, without obligation of any nature excepting a disputed rental claim of the Bronx Exposition, Inc., for a flat rental of $12,000 per year. We also understand that you are willing to dispose of your stock in the Bronx Exposition, Inc.

"We are willing to purchase the above-mentioned property, provided that you will undertake to turn same over to us *free and clear*, excepting for claims of the Bronx Exposition, Inc." (Italics ours.)

From the foregoing, it will be seen that Exposition Co. and Ritchey were selling (1) everything at the Starlight Amusement Park; (2) the entire capital stock of Exposition Co.; and (3) inclusive or in addition, as the case might be, "all its (Exposition Co.'s) assets of every kind and nature." After this transaction was closed, Exposition Co., of course, owned nothing. All it had ever had became the property of Starlight Co.

[2] Contemporaneously with the closing, a bill of sale (in stock form) of the Exposition Co.'s interest in the personal property at Starlight Park was executed and delivered to the Starlight Co. interests. It is suggested that, as the wording of this bill of sale was confined to property at Starlight Park, the parties did not transfer nor intend to transfer all their property, including moneys referred to infra in the custody of the bankruptcy court. This contention is wholly without merit. Obviously a bill of sale would not be appropriate for the transfer of capital stock nor of property in the hands of the bankruptcy court.

A bill of sale, however, was necessary and proper in connection with the personal property at Starlight Park, and was merely the usual paper or instrument in furtherance of the transaction and not in limitation thereof. At the time of closing, it was a necessary precaution that creditors of Exposition Co. should be paid, and therefore $10.000 was placed in Mr. Myers' hands by Starlight Co. "to be used *only*" to satisfy the claims of creditors and we understand that no claim is made as to the balance, if any, of this fund.

Various proceedings were had to relieve the property of the expense of a receivership and the receiver was discharged on June 30, 1921. After all matters were disposed of, there remained in the receiver's

hands $935.30 belonging to Exposition Co., alleged bankrupt. It is to this fund (now $804.60 after deducting expenses of reference) that Mr. Myers lays claim.

[3] Upon the state of facts, supra, we are unable to see any theory upon which such a claim can be based. Any agreement between Mr. Ritchey and Mr. Myers, made prior to the agreement of sale to Starlight Co., that Mr. Myers should be compensated out of the alleged bankrupt's estate (and such is stated to have been made), could not, upon the facts of this case, affect the rights of Starlight Co., the purchaser of the assets.

[4, 5] There is no merit in the suggestion that, when the receiver was discharged and the property returned to the alleged bankrupt, by an order dated June 30, 1921, Mr. Myers obtained a lien on the property which was still in the custody of the bankruptcy court and subject to its administration, and, in any event, the agreement of June 16, 1921, which was carried out on July 15, 1921, with the knowledge, consent, and active aid of Mr. Myers, settled the rights of all concerned. If Mr. Myers thought he was entitled to compensation out of the alleged bankrupt's estate, he should have protected himself by reservation in the agreement of June 16, 1921, or by some other appropriate means.

But the agreement of June 16, 1921, for which he was part sponsor, transferred all the property of Exposition Co. to Starlight Co., and the latter became the owner, free and clear, of that property, including the $935.30 left in the receiver's hands. In such circumstances, where Mr. Myers had no lien on the fund nor on the papers, the case had no resemblance to The Flush (C. C. A.) 277 Fed. 25.

[6] Where there is no lien, and, as here, the facts show no services to the client (here the alleged bankrupt), for which the attorney can recover, a substitution can be made at the will of the client, and the court below was right in ordering the substitution on this particular state of facts.

The petitions to revise are dismissed, with costs, and the orders appealed from affirmed, with costs.