WOODBURY et al. v. ANDREW JERGENS CO.

No. 5.

Circuit Court of Appeals, Second Circuit.

Nov. 7, 1932.

Arthur Berenson and Lawrence Berenson, both of New York City, pro se.

Martin Conboy, of New York City (David Asch, of New York City, of counsel), for appellees.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge.

This suit was commenced by John H. Woodbury and the John H. Woodbury Laboratories, Inc., to restrain an infringement of trade-mark and recover damages for violation thereof. A counterclaim was interposed. On September 19, 1929, appellees applied for the discharge of the appellants as their attorneys. After hearings, the District Judge referred the matter to a special master with the direction that, "If after the Special Master reports on that issue, this Court holds that the case was abandoned by the said attorneys, without cause, further proceedings will be unnecessary." (37 F. [2d] 749.) The master after hearings found that the appellants had abandoned their clients without cause on November 10, 1927, having on December 4, 1926, entered into a contract of retainer to assist in prosecuting this suit. The report was confirmed below.

On August 4, 1931, a decree was entered sustaining the master's report, and it was served on the appellants August 7, 1931. The appellants' appeal was allowed October 6, 1931, and the appeal was thereafter perfected. Pursuant to General Rule 35 adopted by the United States District Court for the Southern District of New York, the respective attorneys negotiated, beginning October 1, 1931, and continuing to November 6, 1931, as to the contents of the record on appeal. On October 31, 1931, the appellees' attorneys agreed with the appellants' attorneys to an extension of time to November 14, 1931, for such purpose. On November 4, 1931, the appellants' attorneys sent a written stipulation to appellees' attorneys for signature. It was returned signed November 5th or 6th. It is very clear that counsel were negotiating as to the record with a view of expediting the printing. On November 6, 1931, the attorneys conferred and did not agree as to the contents of the record. On the same day, November 6, 1931, in the presence of Judge Goddard, who later settled and approved the record, the promise of the appellees to extend the time was made known. Judge Goddard then orally extended the time until November 27th. A formal motion for the extension was made and heard by Judge Coleman November 10, 1931. At this time the appellees' attorneys, contrary to their previous consent, opposed the granting of the extension of time, stating that the court had no authority to extend the time because it had lost jurisdiction by reason of the provisions of General Rules 6 and 35 (b). Judge Coleman accepted this view and denied the motion for an extension.

On December 9th and after the 90 days' extension under General Rule 6 had expired, Judge Goddard settled the record and overruled the contention that jurisdiction was lacking. It is now urged that settlement of the record on that day conflicted directly with General Rule 35 (b), which provides that "no apostles, record or bill of exception will be settled or filed after the term as extended by Rule 6 or by special order has expired."

Every court in the exercise of its judicial functions may make rules of procedure

to regulate its administration of justice to the extent that the statutes do not provide the procedure to be followed. Congress has provided the procedure to be followed in the federal courts by statute and by directing the Supreme Court to adopt court rules. Rev. St. § 917, 28 U. S. Code § 730 (28 USCA § 730). The District Court may also make rules to govern its procedure consistent with Supreme Court rules. Rev. St. § 918, 28 U. S. Code § 731 (28 USCA § 731). But, in exercising the rule-making power, the District Courts cannot restrict or enlarge the jurisdiction or change the statutory or substantive law. Washington-Southern Navigation Co. v. Baltimore & Philadelphia Steamboat Co., 263 U. S. 629, 44 S. Ct. 220, 68 L. Ed. 480; Supreme Tribe of Ben Hur v. Cauble, 255 U. S. 356, 41 S. Ct. 338, 65 L. Ed. 673; Venner v. Great Northern Ry. Co., 209 U. S. 24, 28 S. Ct. 328, 52 L. Ed. 666; Hudson v. Parker, 156 U. S. 277, 15 S. Ct. 450, 39 L. Ed. 424; The Steamer St. Lawrence, 66 U. S. (1 Black) 522, 17 L. Ed. 180; Soderberg v. Atlantic Lighterage Corp., 19 F.(2d) 286 (C. C. A. 2); Aktieselskabet Fido v. Lloyd Braziliero, 283 F. 62 (C. C. A. 2). A rule of court which conflicts with the statute is invalid (Davidson Bros. Marble Co. v. U. S. ex rel. Gibson, 213 U. S. 10, 29 S. Ct. 324, 53 L. Ed. 675· Covey v. Williamson, 52 App. D. C. 289, 286 F. 459; Randall v. Venable (C. C.) 17 F. 162). The rules of practice in the lower courts will not be permitted to conflict with the Supreme Court rules. Los Angeles Brush Mfg. Corp. v. James, District Judge, 272 U. S. 701, 47 S. Ct. 286, 71 L. Ed. 481; Bank of United States v. White, 33 U. S. (8 Pet.) 262, 8 L. Ed. 938. Unreasonable rules are invalid. Godfree v. Peak, 58 App. D. C. 364, 30 F.(2d) 988.

██ If a rule of the District Court is not in conflict with the foregoing authorities, that is, if it does not alter its jurisdiction, change the substantive law, conflict with the statutes or the rules of the Supreme Court, and is reasonable and adopted with the concurrence of the majority of the Circuit Judges (Equity Rule 79 [28 USCA § 723]), it is valid. In applying the above authorities to General Rule 35 (b), it is apparent that the rule does not affect the substantive law. It is a rule of practice. Nor does it alter the jurisdiction of the District Court. No statute is in conflict with the rule, and the Supreme Court Equity Rule 75 (28 USCA § 723) offers a possible conflict. Under Equity Rule 75 (c), the record is to be settled in conformity with 75 (b). Equity Rule 75 (b) regulates the preparation of the statement of evidence in an equity suit. It has been held that the statement of evidence may be settled after the expiration of the term at which the final decree was entered. Barber Asphalt Paving Co. v. Standard Co., 275 U. S. 372, 48 S. Ct. 183, 72 L. Ed. 318. Therefore the record, in the absence of a District Court rule on the subject, may be settled after the term. If General Rule 35 (b) conflicts with Equity Rule 75, it is invalid. It seems to have been intended to prescribe the same practice for apostles in admiralty and records in equity as for bills of exception. It is of course well settled that, once the term has expired, bills of exception cannot be settled, Exporters, etc., v. Butterworth-Judson Co., 258 U. S. 365, 42 S. Ct. 331, 66 L. Ed. 663, and the appellees contend for this construction. In that case the ninety days' extension of the term had expired before the parties agreed to an extension of the term. Jurisdiction there was lost by the expiration of the term, and it could not be regained by agreement of the parties. If the facts required it, we should have to decide whether Supreme Court Equity Rule 75, which did not prescribe any time within which the appellant must present his statement of evidence, impliedly declared that no limit might be put upon that time by local rule. We might even then save General Rule 35 (b), but only as a directory provision; that is, as providing that the appellant must file his statement within the period fixed by General Rule 6, but that the District Court might extend the period for good cause. Under such a construction General Rule 35 (b) would not conflict with Equity Rule 75, but would supplement it by an additional requirement which would not, however, take away the power of the court to approve the record though the term had expired. But we do not think it necessary to decide this question under the facts at bar. Recently the Supreme Court in Taylor v. United States, 286 U. S. 1, 52 S. Ct. 466, 76 L. Ed. 951, where it appeared that the parties agreed during the extended time to file the bill of exceptions, having properly obtained an order of extension, held that filing the bill of exceptions in a further orally agreed upon time, but after the time as extended by the order, was sufficient. See Waldron v. Waldron, 156 U. S. 361, 15 S. Ct. 383, 39 L. Ed. 453.

██ At bar the parties agreed orally to extend the time until November 14, 1931, and

the court (Judge Goddard) granted an extension of this agreement until November 27, 1931. A motion for approval of this extension was made as stated and later denied, we think erroneously.

Before the expiration of the extension until November 27, 1931, the appellants and appellees had served and filed their præcipe and counter præcipe, respectively. The record was not approved until December 9, 1931, and this was the court's delay not the appellants', and it cannot have prejudiced the appellants. Davis v. Patrick, 122 U. S. 138, 7 S. Ct. 1102, 30 L. Ed. 1090. Thus Judge Goddard was right in extending the term, whether General Rule 35 (b) limited his powers without preliminary consent of the parties, or was merely directory and could be suspended in his discretion, United States v. Breitling, 20 How. 252, 15 L. Ed. 900; Freeman v. United States, 227 F. 732 (C. C. A. 2); and he settled the record, as he might, after the time under Equity Rule 75 (28 USCA § 723). Therefore the appellees' claim for a dismissal of the appeal must be overruled.

■■ On January 19, 1927, an order substituting W. H. Chorosh and Lawrence Berenson as attorneys in place of A. Steuer was entered. On March 8, 1927, Chorosh and Lawrence Berenson filed an amended complaint in the action. The appellant Arthur Berenson was a member of the Massachusetts Bar and not admitted to the court below. The master found that "this appearance as attorney of record by Lawrence Berenson was practically his only contribution to the case," and that Arthur Berenson performed the professional services. In Bacon v. Hart, 1 Black. 38, 39, 17 L. Ed. 52, Chief Justice Taney said, speaking of counsel: "The courts can know no counsel in a cause except those who regularly appear as such on the record." This is an unusual motion. It asks for the discharge of one of the attorneys of record and of the counsel. It does not ask for a substitution of attorneys, nor does it ask for the deliverance of papers against which the attorney might have a lien. It does ask for the fixation of counsel fees. To this motion, appellants have not demurred, but have submitted and requested that their compensation be determined and ordered paid. Of course, a client may change counsel as he sees fit, and substitutions of attorneys are granted upon that theory. In re Badger, 9 F.(2d) 560 (C. C. A. 2); In re Exposition Catering Co., Inc., 285 F. 328 (C. C. A. 2). This court has

entertained an application to have a contract declared champertous and canceled. Flagler v. Spellman, 15 F.(2d) 292 (C. C. A. 2). The federal cases have recognized the applicability of the state law as it exists within the district. The remedy of summarily ordering a surrender of papers in a litigation is based upon the control the courts have over attorneys as officers of the court, but an attorney who makes no claim of lien against papers has his right to sue for breach of contract or for quantum meruit. In the instant case, no objection is made to the procedure, and appellants have submitted their claims to the court and have asked for an award.

■ Considering the merits, it appears that the appellants were retained on December 4, 1926, to prosecute the claims of the appellees against Andrew Jergens Company, defendant, pursuant to a retainer, the terms of which called for the payment of $1,000 and 30 shares of preferred stock and additional stock in the event of a successful determination of the litigation; also the payment of one-third of any amounts recovered by way of judgment or settlement. The appellants were fully aware of this arrangement as negotiated. The master found against the claim of the appellants that they did not understand and did not agree fully to these terms. It appears that, after the commencement of the suit, a counterclaim was interposed. The defendant in that action moved to take testimony by depositions in August and September, 1927, in numerous places outside of the state of New York. Appellants first claimed that their retainer did not require them to render such services, but it is clear that the retainer contemplated full prosecution of the suit. It was reasonable to expect that a counterclaim might be interposed. Appellants demanded additional compensation for taking these depositions, and it was demanded just a few days prior to the date set for so doing. The appellants refused to attend the taking of the depositions unless they were paid this additional compensation. It is said that it was, at that time, too late to obtain new counsel, and under this pressure an agreement to pay additional compensation was made.

■ The counterclaim filed with the answer was known to the appellants for some time prior to the taking of these depositions. When they accepted the retainer, if they were not then aware of the possibility of counterclaims being interposed, they surely

had knowledge thereof after they were interposed and the clients had a right to expect that, in the absence of protest which was not made until a few days before the taking of testimony, the attorneys regarded it as part of their duty to proceed under the original retainer. It is no answer for the appellants to say that they required additional compensation because they were confronted with more work than they had contemplated. The position they have assumed is that "contract or no contract it was equitable that (they) ought to be paid for work to be done on an assault of this magnitude." This did not excuse the performance of their contract obligation. 3 Williston on Contracts, § 1963.

■ The further demand for additional compensation, made September 23, 1927, before their departure for Cincinnati to take depositions, was on a par with their previous demands. It is evident from the correspondence between the appellants and their clients that they had not agreed on additional compensation or a modification or rescission of the contract of professional employment. But the appellants did perform services in taking depositions and after November 10, 1927, argued a motion made to suppress the taking of depositions. It is conceded that at no time after October, 1928, was work performed in connection with the prosecution of the case. The master has found abandonment of the cause by the appellants on November 10, 1927, but it was after that date that appellant Arthur Berenson argued a motion concerning the depositions. The appellees' case was settled in December, 1929, but the appellants did not negotiate the settlement. While disagreeing with the master as to the date of abandonment, it is very apparent, on the whole case, that, after the services were rendered in connection with the depositions, the appellants performed no services and did abandon the appellees' case.

■ There were considerable negotiations and an apparent effort on the part of the appellees to bring the appellants back into the case after their withdrawal, but without agreement or success. We are satisfied that there was no modification or rescission of the December 4th arrangement and that there was an abandonment. Under these circumstances, the rule becomes applicable that, where an attorney has been retained under a specific contract and ceased his professional services for an unjustifiable cause, he may not recover compensation either upon the contract or upon the quantum meruit basis. In re Badger, 9 F.(2d) 560 (C. C. A. 2). The appellants were forbidden to demand a new contract even if the work proved to be more arduous and extensive than they had anticipated. Chambers v. Gilmore, 193 F. 635 (C. C. A. 9); Holmes v. Evans, 129 N. Y. 140, 29 N. E. 233.

The abandonment of their employment defeats the appellants' claim to compensation.

Order affirmed.