## WALDRON *v.* WALDRON.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 97. Submitted December 4, 1894. — Decided March 4, 1895.

A bill of exceptions may be signed after the expiration of the term at which the judgment was rendered, if done by agreement of parties made during that term.

If such bill is not delivered to counsel within the time fixed by the agreement, objection to the failure to do so must be taken when the bill is settled, and, if decided against the objector, the question should be reserved.

If evidence legally inadmissible is admitted over objection, that fact is ground for reversal by the appellate court.

The assertion in argument by counsel of facts of which no evidence is properly before the jury in such a way as to seriously prejudice the opposing party is, when duly excepted to, ground for reversal.

Where evidence is admitted for one certain purpose, and that only, the mere fact that its admission was not objected to at the time, does not authorize its use for other purposes for which it was not, and could not have been, legally introduced.

It is the duty of the court to correct an error arising from the erroneous admission of evidence when the error is discovered, and when such correction is duly made the cause of reversal is thereby removed.

The fact of a divorce being confessed by the pleadings, and being admitted by counsel for defendant in open court, it is unnecessary to prove it, and the divorce record is inadmissible.

MARY Russell Beauchamp was married in September, 1865, to E. H. Waldron. They lived in Lafayette, Indiana, from the date of their marriage until 1875, when they removed to St. Louis, the employment of the husband calling him there. In 1877 they left St. Louis and returned to Indiana, where they continued to live as husband and wife until June, 1886. At that date the husband abandoned his marital relations and fixed his permanent residence in Chicago. For twelve or fifteen years, prior to June, 1886, the husband, Waldron, had friendly relations with E. S. Alexander and wife, who lived in Chicago, Waldron dealing with Alexander in a business way, and also calling socially at his residence, and Alexander visiting Waldron when he came to Lafayette. In February, 1886, E. S. Alexander died, leaving a widow. Subsequently Mrs. Waldron filed in the Superior Court of Tippecanoe County, Indiana, a suit for divorce against her husband, which ripened, in June, 1887, into a decree granting the divorce and giving her $10,000 alimony. In October, 1887, E. H. Waldron married Mrs. Josephine P. Alexander, the widow of E. S. Alexander. In June, 1888, Mary Russell, the divorced wife of E. H. Waldron, sued Mrs. Josephine P. Waldron, the former Mrs. Alexander, in the Circuit Court of the United States for the Northern District of Illinois. The grounds of this action are stated in her complaint as follows:

1st. "Whereas the said defendant, contriving and wrong-

fully, wickedly, and unjustly intending to injure the said plaintiff and to deprive her of the comfort, fellowship, society, aid, and assistance of Edwin H. Waldron, the then husband of the said plaintiff, and to alienate and destroy his affection for said plaintiff, on, to wit, the 6th day of June, A.D. 1886, and on divers other days and times between said 6th day of June, A.D. 1886, to the 21st day of June, A.D. 1887, at, etc., wrongfully, wickedly, and unjustly debauched and carnally knew the said Edwin H. Waldron, then and there still being the husband of the said plaintiff, and thereby the affection of the said Edwin H. Waldron for the said plaintiff was then and there alienated and destroyed, and also by reason of the premises the said plaintiff from thence hitherto wholly lost and was deprived of the comfort, fellowship, society, and assistance of the said Edwin H. Waldron, her said husband, in her domestic affairs, which the said plaintiff during all that time ought to have had and otherwise might and would have had, etc., aforesaid."

2d. "Whereas the said defendant, contriving and wrongfully, wickedly, and unjustly intending to injure the said plaintiff and to deprive her of the comfort, fellowship, society, aid, and assistance of Edwin H. Waldron, the then husband of the said plaintiff, and to alienate and destroy his affection for the said plaintiff on, to wit, the 6th day of June, A.D. 1886, and on divers other days and times between said 6th day of June, A.D. 1886, and the 21st day of June, A.D. 1887, at, etc., wrongfully and unjustly sought and made the acquaintance of Edwin H. Waldron, the husband of the said plaintiff, and then and there, well knowing that said Edwin H. Waldron was the husband of said plaintiff, wrongfully, wickedly, and unjustly besought, persuaded, and allured the said Edwin H. Waldron to desert and abandon the said plaintiff, and thereby the affection of said Edwin H. Waldron for the plaintiff was alienated and destroyed, and also by reason of the premises the plaintiff has from thence hitherto been wholly deprived of the affection, society, aid, and assistance of her said husband in her domestic affairs, which the plaintiff during all that time ought to have had and otherwise might and would

have had, and also by reason of the premises the said plaintiff during all said time from thence hitherto suffered great mental anguish and loss of social reputation at, etc., aforesaid, to the damage of said plaintiff of one hundred thousand dollars, and therefore she brings her suit," etc.

The defendant pleaded that inasmuch as the relation of husband and wife, which formerly existed between the plaintiff and defendant's present husband, had been terminated by a decree of divorce, granted at plaintiff's own demand, the action was not maintainable. She further pleaded the general issue.

The case came to trial in January, 1890. In the opening statement, foreshadowing the case which it was proposed to prove, one of the counsel for plaintiff read to the jury extracts from the divorce proceedings, and commented thereon in a manner which clearly indicated that they were links in a chain of evidence, which plaintiff proposed to offer in order to establish the adultery of the defendant. Thereafter, during the progress of the trial, the record of the divorce suit was offered in evidence by the plaintiff, for the general purposes of the case, and its admission was objected to by the defence on the ground that it was *res inter alios*, and that the plaintiff could not make proof for herself by offering her own petition as evidence in her favor, and thus asperse the character of the defendant. The court admitted the record to prove the fact of the divorce alone, and, while thus admitting it, repeatedly declared that it could only be used for that one purpose, and that the averments in the petition and other matters reflecting on the defendant were not to be disclosed or read to the jury. The defendant excepted to the admission of the record for any purpose whatever.

The plaintiff then offered the statute of Indiana relative to divorce, and this was also admitted, in spite of objection, as evidence of the Indiana law on that subject. The testimony of the judge before whom the divorce proceeding was had was then admitted. Wilson, who appeared as attorney for Waldron in the divorce proceeding, was also allowed, over objection, to testify as to his connection therewith. Davie, the

witness on the strength of whose testimony the decree of divorce had been mainly based, was also allowed to testify. In the closing argument to the jury Mr. Aldrich, of counsel for the plaintiff, used the following language:

" The divorce law of Indiana provides that . . . a divorce may be decreed . . . for the following causes and no other: Adultery, except as hereinafter provided; impotency existing at the time of the marriage; abandonment for two years; cruel and inhuman treatment of either party by the other; habitual drunkenness of either party; the failure of the husband to make reasonable provision for his family for a period of two years; the conviction subsequent to the marriage, in any country, of either party, of an infamous crime. . . .

" The only two that are referred to in this bill for divorce — the record is not here, I shall state it, and if it is challenged I shall read it when it comes — are these: That he had abandoned her. Is there any conflict in the evidence in this case that that abandonment only extended from the 6th day of June up until the time this decree was entered the 21st day of June, 1887, a year? Is that a compliance with the statute calling for abandonment for two years? Nothing of the kind. Cruel and inhuman treatment. Hasn't Edward H. Waldron testified upon the stand in this case, and is there any dispute upon this subject, that there was no cruel and inhuman treatment upon his part in this case; that he had never been guilty of cruel and inhuman treatment, and has the statement been challenged that cruel and inhuman treatment under the laws of the State of Indiana only means acts of cruelty coupled with personal violence ?

" There has been no cruelty or anything of the kind. They say there is no charge of adultery in this case. The record says that there was no cruel and inhuman treatment, and that he was enamoured of Josephine P. Alexander, in this case. . . . Mr. Davie was the only witness upon this subject, . . . and he has said . . . that he . . . did not know Edward H. Waldron until he came to Chicago, and Edward H. Waldron . . . has testified . . . that up to the time he

came to Chicago he had no acquaintance with Robert Davie.
. . . He was the agent, the paid agent, of Edward H. Waldron. Edward H. Waldron is too able a man, he has too much
.brains, he is too cute, he is too slick, gentlemen of the jury,
not to apply any other terms but those that are fitting to him,
to suppose that a decree could be obtained in Indiana for
abandonment or for cruelty or for inhuman treatment. Edward H. Waldron knew as well as you know that he could
only get a divorce and it could only be procured on the
ground of his adultery with somebody. . . . Robert Davie
knew it. By reason of this non-acquaintance at that time
Robert Davie could not have testified to any of the acts of
cruelty. How did Robert Davie acquire his information? By
these innumerable visits to Chicago. . . . In view of the
testimony in this case; in view of the relations of the parties;
in view of the fact, that Edward H. Waldron has testified
that he had talked with the defendant on two occasions about
these divorce matters, and the fact that he was living at this
house at that time, with that fact before you, you cannot
believe, that it was unpremeditated, that it was unknown, or
anything of that kind." The record then continues:

"Mr. McCoy, for the defendant, excepted to the statement
of counsel. that Robert Davie had obtained the information to
which he testified in the divorce proceeding in Chicago, or
from Edward H. Waldron, on the ground that the court had
excluded the evidence of Robert Davie on that subject.

"Mr. McCoy. 'I read a question here as to whether or
not Mr. Davie obtained his information in Chicago, and he
replied that he did not, and that extra question and answer
was stricken out as being within the character of the evidence
excluded by the court; therefore I do not think it is proper
to comment upon to'the jury.'

"Mr. Aldrich further stated to the jury: 'I submit to you,
gentlemen, that any information upon that subject, whether it
was cruelty or whether it was cruel and inhuman treatment,
or whether it was abandonment, must have been acquired by
Mr. Davie while he was in Chicago.'

"To which statement of counsel for the plaintiff Mr. McCoy,

counsel for the defendant, objected, and then and there duly excepted for the reasons above stated.

"Mr. McCoy further objected to the statements of the counsel for the plaintiff to the jury as to the laws of Indiana on the subject of divorce and the argument that it must have been granted on the grounds alleged in the complaint in the divorce proceeding reflecting upon the character of the defendant, Josephine P. Alexander, and then and there duly excepted to such statements.

"And thereupon, after further arguments to the jury, . . . Mr. Dexter addressed the jury in a closing argument on behalf of the plaintiff, in the course of which . . . he spoke as follows :

*" Mr. Dexter's Closing Argument.*

" Now, what was that divorce ?  Gentlemen, this subject of divorce was spoken of, you recollect, between Waldron and the defendant.  It was a matter of conversation, he says, on one or two occasions, and you have heard read his language on that subject.  Now, I assert that here was a wicked scheme against the established order of society and the rights of this woman, and that the defendant shall not escape here by throwing up false issues.  Are there any grounds of divorce here except those which sustain this action ?

" Mr. Walker, for defendant.  I enter my objection to the statement of counsel.

" The court.  All that was in the declaration the court excluded.

" Mr. Dexter. . . . The conclusion that it [the evidence] leads to counsel shrinks from; it hurts him.  The jury cannot be fogged about it.  There is something underneath here that is reached for, and you will lay hold of it, and you will not be deceived about it.  There will be no effectual effort to keep your minds from coming to the conclusion that they ought to reach.  I shall confine myself to the statements admitted by the court and read to the jury. . . .

" The plaintiff prays for a decree of divorce for misconduct of the defendant on account of his cruel and inhuman treatment

of this plaintiff — neither cruel nor inhuman treatment proven save in the language of the bill — ' in this, that he has become enamoured of one Josephine P. Alexander, a married woman.' "

In its final charge to the jury the court, among other things, said :

" The court has already adjudged that the decree of divorce obtained by the plaintiff from Mr. Waldron, June 21, 1887, is evidence conclusive in this case that the marriage relations between the plaintiff and Mr. Waldron were dissolved from the date of that decree. The decree of divorce acted on the status of the parties and dissolved the marriage relation theretofore existing between them and left each free to remarry ; but the allegations contained in the bill of complaint in that case against Mrs. E. S. Alexander, the present defendant, are not evidence in this case and were excluded by the court.

" The evidence also taken on the trial of that case is not competent evidence against the defendant in this case, and was also excluded. She, not being a party thereto, is not permitted to appear and cross-examine the witnesses. Nor should the jury assume or infer from anything in evidence in this case that the judgment of divorce was granted upon the ground of adultery, as that is not one of the grounds alleged in the bill of complaint, nor upon any ground of — for any of the causes having reference to the conduct of the defendant in this case. Such an inference has been sought to be drawn by counsel from the proceedings in that case, but it is an inference not warranted by the record in evidence and unfair towards the defendant. The jury will try this case upon the evidence produced on this trial, and not assume or infer that other evidence might have been produced here or was produced in some other case to which the defendant was not a party."

In February there was a verdict in favor of the plaintiff for $17,500. In March an application for a new trial was heard, and taken under advisement. In June, the motion for a new trial having been overruled, the defendant moved in arrest. This motion was also overruled, and on the same day judgment

was rendered on the verdict. The record states that on motion for defendant the time to file a bill of exceptions was extended to the first day of November next. Thereafter a writ of error was sued out and a supersedeas bond fixed at $25,000. On October 6, 1890, a written stipulation was entered into between counsel, which, after mentioning the suing out of the writ of error, the giving of the supersedeas bond, and the issuance of citation returnable here in October, 1890, expressed the desire of the plaintiff in error to obtain an extension of time to prepare the bill of exceptions and file the record here, and set out that this extension was agreed to by the defendant in error, provided —

"First. That the above-named defendant (as plaintiff in error) shall file in the office of the clerk of the Supreme Court of the United States the said writ of error, the said citation and this stipulation, and shall have the said cause docketed in said Supreme Court in its regular order within the time regularly required by the rules of said court for the filing of the transcript of the record in said cause in said Supreme Court as if this stipulation had not been made.

"Second. That counsel for the above-named defendant shall have until November 15, A.D. 1890, to prepare the bill of exceptions in said cause and deliver it to counsel for the above-named plaintiff for examination and such correction as he may deem proper.

"Third. That counsel for the above-named plaintiff shall examine said bill of exceptions and return it to counsel for the above-named defendant within thirty days after it shall have been delivered to him with any proposed corrections or alterations which he may deem proper.

"Fourth. Thereafter, as soon as practicable, but within thirty days upon reasonable notice, said bill of exceptions shall be presented to the judge who conducted the trial of said cause for his approval after the settlement by him of any parts of said bill of exceptions as to which counsel may have been unable to agree.

"Fifth. That said bill of exceptions shall be approved by said judge and be by him sent to the clerk of said Circuit

Court with directions that it be filed as of the date of the entry of said judgment.

" Sixth. That within thirty days after said bill of exceptions shall have been so filed the transcript of said record shall be completed and filed in the Supreme Court of the United States in said cause as theretofore docketed.

" That, in the meantime, so long as counsel for said above-named defendant make no default in the performance of the conditions of this stipulation, counsel for the above-named plaintiff (defendant in error) will make no motion to dismiss said writ of error for failure to file said transcript of the record within the time regularly prescribed by the rules of said Supreme Court, and the said transcript, when so filed, shall be taken and considered as having been filed in apt time.

" This stipulation is executed in triplicate, one to be filed in the Supreme Court of the United States, and one to be retained by counsel for each of said parties.

" Dated at Chicago, Illinois, October 6, A.D. 1890."

Application was made here in due season to docket this agreement and writ of error in lieu of the record, and was refused. The settlement of the bill of exceptions by the court is thus stated in the record :

" The clerk of said court will file this bill of exceptions as of the date of July 10th, A.D. 1890.    R. BUNN, *Judge.*

" To William H. Bradley, Esq., clerk.

" Upon the presentation of the bill of exceptions to the judge for settlement, on February 21st, 1891, counsel for plaintiff (defendant in error) moved that the judge do not sign the same, because the defendant (plaintiff in error) has waived her right thereto, since said defendant has not filed this bill of exceptions within the time prescribed by the judge at the time the appeal was prayed, and has failed to have said case docketed in the Supreme Court, as in and by a stipulation entered into on October 8th, 1890, between the attorneys of the respective parties prescribed.

" Which motion was denied by the judge.

" To which ruling counsel for plaintiff then and there duly excepted.

"Date, Madison, Feb'y 21, 1891."

The bill of exceptions in its caption recites:

"Be it remembered that on the trial of. the above-entitled cause on the 21st, 22d, 23d, 24th, 27th, 28th, 29th, 30th, and 31st days of January, and the 1st, 3d, and 4th days of February, A.D. 1890, in the December term of said court A.D. 1889, the said cause having been reached and come on for trial in its regular order on the trial calendar of said court, the following proceedings were had, viz."

When it reaches the point where the evidence for plaintiff is recited there appears the heading "Plaintiff's Evidence." At the point where the opening evidence for the plaintiff ends, is the following entry: "Which was all the evidence here offered on the part of the plaintiff on the trial of the cause." This is immediately followed by the words, "Defendant's Evidence. Thereupon the defendant, to maintain the issues on his part in said cause, introduced the following evidence." At the close of the evidence which follows the foregoing is the entry, "Here counsel for defendant rested their case;" and following this, "Rebuttal. And thereupon the plaintiff, further to maintain the issues on her part, introduced the following evidence in rebuttal." At the conclusion of this evidence is the statement, "Which was all the testimony offered on the trial of said cause." The record was filed and docketed here February 28, 1891. In December, 1892, defendant in error moved to vacate the supersedeas because the surety on the bond had become insolvent. On December 12 it was ordered that a new bond be given within thirty days, and on the same day the new bond was filed.

*Mr. William H. Barnum, Mr. H. J. Caldwell* and *Mr. Louis J. Pierson* for plaintiff in error.

*Mr. Charles H. Aldrich* for defendant in error, to the points on which the case turned in this court, said:

I. The record shows that judgment was entered on the verdict in this case on July 10, 1890, and defendant given until

November 1, 1890, to file her bill of exceptions. The bill of exceptions was not tendered to the judge until February 21, 1891, at which date he signed and sealed it as of the date of July 10, 1890. It is confidently submitted that the court had no jurisdiction to sign the bill at the time it was signed, and that its order to the clerk to enter the same as of the earlier date was wholly nugatory and void.

The conditions upon which the extension was granted failed; the plaintiff in error presented the bill of exceptions to the counsel for defendant in error January 15, 1891, sixty days later than he was required to do by the stipulation; he was notified as soon as this court refused to docket the case that this point would be insisted upon, and when the bill was tendered the question was distinctly reserved as certified by the judge.

Assuming, for the purpose of argument only, that counsel were able by their mere stipulation and without an order of the court procured before the expiration of the time limited, to extend the jurisdiction of the court to settle the bill of exceptions, it is certain that they had power to prescribe the terms of their own agreement. It was therefore competent to make the stipulation subject to the proviso that the "cause shall be docketed in the Supreme Court of the United States, as early and in the same order as to priority, as it would be docketed if the transcript of the record were filed in said Supreme Court, or within the time regularly required by the rules of said court, so that the time when said cause shall be reached for hearing in said Supreme Court shall not be postponed by such extension."

The right of the judge to sign the bill of exceptions on February 21, 1891, must therefore be determined independently of the stipulation and as if it had never been entered into. Assuming this, what are the rights of the parties?

A judgment is entered July 10, 1890, and the defendant given until November 1, 1890, to file her exceptions. She fails to do so until February 21, 1891. The statutory terms of the Circuit Court of the United States for the Northern District of Illinois are required to be held on the first Monday

of July and the third Monday of December of each year. By rule 21 as prescribed by that court, adjourned terms are held on the first Mondays of March, May, and October of each year. By rule 23 of the same court, process may be made returnable to the first day of any regular, special, or adjourned term.

The verdict in this case was recorded at the December term, 1889, and judgment rendered at the July term, 1890. The time given by the court, November 1, 1890, was a time within the same term. The trial was had before the District Judge for the Western District of Wisconsin, who at the trial was sitting as a Circuit Judge in the Northern District of Illinois. The order overruling the motion for a new trial was entered by the Circuit Judge, as the record states, by the direction of said District Judge. If the latter in Wisconsin had no jurisdiction to enter the order, it would probably be considered valid as having been entered by the Circuit Judge, and hence his order; but what authority had the District Judge, in February, 1891, sitting at Madison, Wisconsin, as the record indicates, and as the fact was, to direct the clerk of the Circuit Court of the Northern District of Illinois to file any papers as of July 10, 1890, or any other date?

II. But assuming for the purpose of argument only, that he was still authorized to exercise the powers of a Circuit Judge in the Northern District of Illinois, it is confidently submitted that neither he nor any other judge in that district had any power to enter any orders in the case of *Waldron* v. *Waldron*. That case had passed beyond the jurisdiction of the Circuit court. This has been decided by this court in *Mueller* v. *Ehlers*, 91 U. S. 249.

The writ of error was dated July 15, 1890, and was returnable the second Monday of October, 1890; the citation was dated July 16, 1890, and was returnable at the same time. This brings the case squarely within the decision in *Michigan Insurance Bank* v. *Eldred*, 143 U. S. 293, both upon the question of the want of power after the term and the want of jurisdiction after the entry of a writ of error in this court.

III. The bill of exceptions can afford the court little if any

assistance in any event. It does not purport to contain the evidence. The record states "which was all the *testimony* offered on the trial of said cause." Where a like statement was made in a bill of exceptions the Supreme Court of Indiana said: "As we have said, the evidence is not in the record. The bill of exceptions states that all the 'testimony' is in the record; but this is not equivalent to a statement that all the 'evidence' is in the record. Testimony is one species of evidence. But the word 'evidence' is a generic term which includes every species of it. And, in a bill of exceptions, the general term covering all species should be used in the statement as to its embracing the evidence, not the term 'testimony,' which is satisfied if the bill only contains all of that species of evidence. The statement that all the testimony is in the record may, with reference to judicial records, properly be termed an affirmative pregnant." *Gazette Printing Co.* v. *Morss*, 60 Indiana, 153, 157.

IV. There was no available error committed by the admission of the divorce record in evidence.

It is an elementary principle of law that objections to testimony *en masse* are unavailable. Thompson on Trials, § 696. The principle is that the court must be advised of the specific point urged by counsel in order that he may rule intelligently upon it, and not be forced to the impracticable course of scanning every question of law which might be raised on evidence submitted. As many of the cases state, it is not a technical rule, but one intended to mitigate the hardships of technicalities. It saves the necessity of retrials, puts the court upon notice of the exact point to be relied upon, and therefore tends to do away with the technical questions which might be raised in the appellate court. If this divorce record, or any part of it, was admissible for any purpose, then the objection and exception made by counsel for plaintiff does not avail, for their objection was to the admission of the record for any purpose.

The decree of divorce is a judgment *in rem*, binding upon all the world as showing the status of the parties. It is conclusive against all parties as to the fact that Mary A. Waldron

is no longer entitled to the love and affection, the *consortium* of her husband. It is not conclusive as to why she is no longer entitled to it. The loss of *consortium* is one of the material facts in issue. It bears a strict analogy to the rules of evidence in criminal cases where it is every-day practice to admit evidence to prove the *corpus delicti* before there is any proof connecting the defendant with the crime. The fact that the crime has been committed is the first issue to be established by the prosecution, and in many cases it would be utterly impossible to prove the commission of a crime if evidence were only admissible which showed upon its face some connection of the defendant with the state of facts sought to be proven.

Much more is this principle important where the case involves questions of conspiracy. Indeed, a great branch of the law has been established on these questions of conspiracy and the evidence which can be admitted to prove it. Necessarily the proof is circumstantial and more remote. The connection is more inferential than in other cases where the direct acts of the parties charged can be proven. The case at bar involves practically a question of conspiracy. The motives are found in the mind of Mrs. Josephine P. Alexander. The overt acts, most of them, following upon those motives and volitions, come through Edward H. Waldron. The consequences of these acts are evident by the necessary acts of Mrs. Mary A. Waldron following upon those consequences. The logical connection is close and irrefutable. This record is of itself admissible as tending to prove one of the issues in the case, namely, the actual loss of the *consortium*. We are not compelled to show any connection with the acts of the plaintiff in error.

Prior to the admission of the divorce record it was in evidence that the plaintiff was living apart from her husband. This might have contained an inference to the jury that she was living apart from him of her own choice; that she was still entitled to his love and affection, and by proper conduct might reëstablish herself and him in their marital relations, and explain and settle any temporary estrangement then existing.

The divorce record would then be admissible to conclusively rebut any such possible inference, if it would show that she was no longer entitled to his *consortium ;* that she could not then lawfully live with him, could not lawfully claim his protection, or any of those rights which she had theretofore had in him.

And again, the instructions of the court make it clear that the defendant could not have been prejudiced either by the admission of the divorce record or the statutes of Indiana upon the subject of divorce, or any inferences sought to be drawn therefrom by counsel. *Castle* v. *Bullard,* 23 How. 172, 189.

The prevailing opinion is that the error of admitting incompetent evidence may be cured by an instruction admonishing the jury to disregard such evidence, even in a criminal case. *Hopt* v. *Utah,* 120 U. S. 430 ; *State* v. *May,* 4 Dev. (Law), 330 ; *Goodnow* v. *Hill,* 125 Mass. 587 ; *Smith* v. *Whitman,* 6 Allen, 562 ; *Hawes* v. *Gustin,* 2 Allen, 402 ; *Dillin* v. *People,* 8 Michigan, 357 ; *Specht* v. *Howard,* 16 Wall. 564.

V. As connected with the admission of the divorce record, counsel for plaintiff in error raise the point that Mr. Dexter of counsel for plaintiff below made remarks outside the evidence, which had a tendency to prejudice the jury. These remarks are set forth quite extensively in the brief. The record shows that defendant's counsel objected to Mr. Dexter's argument at the point where they allege he went outside the evidence, and also shows that the court, upon this objection, stated to Mr. Dexter that all that was in the declaration (petition for divorce) had been excluded by the court. There was no further attempt by the counsel for plaintiff in error to have Mr. Dexter confine his remarks to what they conceived was in evidence. There was no suggestion to the court that it should compel him to limit these remarks as they allege he should have limited them, and there was no exception taken. We contend that Mr. Dexter's remarks, being upon the allegations of the petition for divorce, were warranted because, in our view, the allegation as to Mrs. Josephine Waldron was, as we have heretofore shown, in evidence. But even granting

that he went outside of the evidence, we think the instructions of the court have cured whatever injury might have been done by these remarks. These instructions on the point of the divorce record seem to us to completely do away with the contention of plaintiff in error that she was injured by the introduction of that evidence. It is an undeniable rule of law that, even if improper evidence is admitted, the court may avoid the error by instructing the jury to disregard it. No instructions could be clearer to that effect than those in this case.

It would be utterly impossible to conduct without error a trial of any case presenting a great mass of evidence with many difficult points of ruling as to admissibility, if the court could not at a later stage of the proceedings, by its explicit admonitions, remove the effect of error which inadvertently crept in.

It is no misconduct to urge the widest inferences from the evidence. It is misconduct (not sufficient to warrant a new trial, if corrected by the court in his instructions) to comment upon matters not in evidence. I think no well-considered case can be found where the verdict of the jury was interfered with because the attorney urged inferences from proper evidence not warranted in the opinion of the court. To establish such a rule would be equivalent to saying that every argument of attorneys engaged in a contest must be sound, and as in every such trial there are at least two such, we would be reduced to the absurdity of holding that both must be right, a conclusion often sound in a qualified sense, not in the broad one in which it is sought to be here applied. The practice and traditions of our profession, as well as the rules of common sense, have established the right of each advocate to urge a jury to adopt the conclusion most favorable to his client from the evidential facts, and has delegated to the jury, and not to the court, the power to decide between them. Therefore I submit, that if any party had a right to complain, it was the plaintiff, when the court, both upon trial and in the instructions, so limited the effect of the divorce record.

MR. JUSTICE WHITE, after stating the case, delivered the opinion of the court.

The motion to dismiss or affirm is without merit. The signing of the bill of exceptions after the expiration of the term at which the judgment was rendered, was lawful if done by consent of parties given during that term. *Hunnicutt* v. *Peyton*, 102 U. S. 333; *Davis* v. *Patrick*, 122 U. S. 138; *Michigan Ins. Bank* v. *Eldred*, 143 U. S. 293.

The fact that the bill of exceptions was not handed to counsel for defendant on or before November 15, 1890, does not appear of record, and if it did, it would be rendered immaterial by the action of the judge below in settling the bill.

If the bill was not delivered to counsel within the time fixed by the agreement, objection to the failure so to deliver it should have been urged when the bill was settled. And if an objection then taken was overruled, the question of the correctness of such action should have been then reserved. The fact is, that the only reservation made in the settlement of the bill is thus stated in the record : " Counsel for plaintiff move that the judge do not sign the same, because the defendant has not filed this bill of exceptions within the time prescribed . . . at the time the appeal was prayed." This, of course, was not sound, in view of the agreement whereby the time which had been at first fixed was extended. The only question reserved in this connection is accordingly, also, without merit. As to the contention that the appeal was docketed too late, the defendant in error is precluded from relying thereon by reason of his motion here for a new bond, long after the entry of the case on the docket of this court, which was made at the return term.

Whether the concluding words in the bill of exceptions, " which was all the testimony offered on the trial of the cause," would be treated as meaning all the evidence, if unexplained by the context of the bill, need not be considered, as all the recitals in the bill, from the caption to the end thereof, taken together, we think, conclusively show that the

words, "all the testimony," were used as synonymous with "all the evidence." This conclusion is strengthened by the fact that the bill was settled contradictorily, and no reservation as to its incompleteness was made.

Coming then to consider the record, we find that the assignments of error here are of a threefold nature: (*a*) those which relate to the conclusions of law reached by the court upon the merits of the controversy; (*b*) those which complain of perversion and misuse by counsel of evidence admitted, which it is alleged were so serious that they must have affected the minds of the jury, to such an extent as to render the verdict and judgment necessarily reversible; and (*c*) those which rest upon the alleged rejection of legal and admission of illegal evidence.

We will first approach the investigation of the matters mentioned under the second heading, since if the complaint of perversion and misuse of evidence is justified, it is not necessary to consider whether the rulings on the admissibility of testimony or the final conclusions of law, upon the merits, were correct.

The complaint of the conduct of counsel in argument is substantially predicated upon the following analysis of the facts, which we find borne out by the record. In the opening statement of counsel for plaintiff, portions of the divorce proceedings were read to the jury, counsel saying, among other things: "Here was an allegation that she has enticed him from his home, and the divorce was granted upon that ground among others; that is, the decree finds that the facts in the complaint were proved and that the divorce was granted upon that ground." When the record of the divorce proceedings was offered by the plaintiff objection was made thereto, and thereupon the court admitted it to prove the fact of the divorce alone, expressly limiting it to such purpose, and forbidding the reading or stating to the jury any of the averments found in the petition which in any way reflected upon the defendant. When the statute of Indiana was admitted, over objection, its introduction was allowed solely for the purpose of showing the law under which the divorce was granted.

Having thus obtained the admission of the record and the statute for qualified and restricted purposes, plaintiff's counsel, in their closing argument to the jury, used these instruments of evidence for the general purposes of their case, repeated to the jury some of the averments in the petition which assailed the plaintiff's character, and put those allegations in juxta-position with the statute of Indiana on the subject of divorce and the testimony of certain witnesses, in order to produce the impression upon the minds of the jury that the decree of divorce had been granted on the ground of adultery between the defendant and Waldron. Indeed, the fact is that the counsel after referring the jury to the evidence which was not in the record stated to them, in effect, that it established the fact, or authorized the fair inference that the decree of divorce had been rendered on the ground of adultery with Mrs. Alexander, and therefore conclusively established the right of the plaintiff to recover in the present case. It is un-necessary to say that all this is ground for reversal, unless its legal effect be in some way overcome. It is elementary that the admission of illegal evidence, over objection, necessitates reversal, and it is equally well established that the assertion by counsel, in argument, of facts, no evidence whereof is prop-erly before the jury, in such a way as to seriously prejudice the opposing party, is, when duly excepted to, also ground therefor. *Farman* v. *Lanman,* 73 Indiana, 568; *Brow* v. *State,* 103 Indiana, 133; *Bullock* v. *Smith et al.,* 15 Georgia, 395; *Dickerson* v. *Burke,* 25 Georgia, 225; *Lloyd* v. *H. & St. J. Railroad,* 53 Missouri, 509; *Wightman* v. *Providence,* 1 Cliff. 524; *Martin* v. *Orndorff,* 22 Iowa, 504; *Tucker* v. *Henniker,* 41 N. H. 317; *Jenkins* v. *N. C. Ore Dressing Co.,* 65 N. C. 563; *State* v. *Williams,* 65 N. C. 505; *Hoff* v. *Craf-ton,* 79 N. C. 592; *Yoe* v. *People,* 49 Illinois, 410; *Saunders* v. *Baxter,* 53 Tennessee, 369.

The foregoing conclusions are not disputed by the defend-ant here, but she seeks to avoid their application as follows: First, by denying the right of the plaintiff in error to raise the question, upon the ground that no exception was reserved to the misuse by counsel of the evidence which is complained of;

secondly, by asserting that the misuse did not take place, and that the assertion thereof in the bill of exceptions is erroneous and "inadvertent;" thirdly, by admitting that use was made of the various items of evidence mentioned in argument, and contending that this was not a misuse, because the evidence was legally admissible for all the purposes of the cause, and was therefore properly so used; and, finally, by insisting that, even if use was made of alleged facts, evidence whereof had been expressly excluded, and which were not, therefore, before the jury, the wrong thus committed by counsel was cured by the final charge of the court, and therefore does not give rise to reversible error. Without pausing to consider the palpable inconsistency of these various contentions, we pass to the consideration of their correctness.

The claim that no exception was reserved to the misuse of testimony is founded on the proposition that, as the objection, made by defendant, to the record and statute was to their admissibility in any form or for any purpose, and as they were admissible to show the fact of divorce, the objection, being general, was not well taken. To state this argument is to answer it. It is clear that where evidence is admitted for one certain purpose, and that only, the mere fact that its admission was not objected to at the time, does not authorize the use of it for other purposes for which it was not, nor could have been legally introduced. The right of the defendant below to object to the perversion and misuse of the evidence depends upon whether objection was duly reserved thereto and not upon whether exception was taken to the admissibility of the evidence which, it is asserted, was misused. That exception was here taken to the misuse of the evidence is plain. At the close of the case, when reference was made by one of the counsel for the plaintiff to the record and to the Indiana statute, and the other matters connected therewith, the following exception was reserved:

"Mr. McCoy, counsel for defendant, further objected to the statements of counsel for the plaintiff to the jury as to the laws of Indiana and the suit for divorce, and the argument that it must have been granted upon the grounds alleged in the com-

plaint in the divorce proceedings which reflected· upon the character of the defendant Josephine P. Alexander, and then and there duly excepted to such statements."

It is true that when, in the closing argument for the plaintiff, made by other counsel, similar language was used and objected to, no exception was reserved. This, however, is immaterial,. as exception was reserved to the language, first used, and this one exception, if well taken, must lead to reversal.

The contention that the prejudicial averments in the petition for divorce were not conveyed to the jury is thus argued : True, the bill of exceptions shows that they were so conveyed, but, because this statement is in direct conflict with the rulings of the court, therefore the statement, in the bill of exceptions, would seem to be an inadvertence. In other words, the argument is that the bill of exceptions must be disregarded on the theory that, if the facts stated in the bill be true, error results, and error is not to be presumed.

The remaining suggestions are quite as unsound as the specious one we have just considered. The divorce proceeding and statute, it is asserted, were admissible for all purposes, because there was evidence tending to. show that the divorce was inspired by Waldron in connivance with the defendant below, and because such proceedings were part of the *res gestæ*, etc., etc. Whatever weight these propositions may intrinsically possess need not be considered, since the question we are examining is, not whether the divorce proceedings should have been admitted, for the general purposes of the cause, but whether, having been rejected by the court for such purposes, it was competent for the plaintiff .to. use them in direct violation of the restriction placed upon their use. If error was committed in restricting the use of the evidence, the plaintiff's remedy was to except thereto, and not to disregard the ruling of the court and use the evidence in violation of the conditions under which its admission was secured.

· We come now to the last contention, which is this, that, conceding misuse was made of the record and other evidence, yet, as the misuse was corrected by the final charge of the court,

therefore the error was cured. Undoubtedly it is not only the right but the duty of a court to correct an error arising from the erroneous admission of evidence when the error is discovered, and when such correction is made, it is equally clear that, as a general rule, the cause of reversal is thereby removed. *State* v. *May*, 4 Dev. (Law) 330; *Goodnow* v. *Hill*, 125 Mass. 587, 589; *Smith* v. *Whitman*, 6 Allen, 562; *Hawes* v. *Gustin*, 2 Allen, 402, 406; *Dillin* v. *People*, 8 Michigan, 357, 369; *Specht* v. *Howard*, 16 Wall. 564. There is an exception, however, to this general rule, by virtue of which the curative effect of the correction, in any particular instance, depends upon whether or not, considering the whole case and its particular circumstances, the error committed appears to have been of so serious a nature that it must have affected the minds of the jury despite the correction by the court. The rule and its exception were considered in *Hopt* v. *Utah*, 120 U. S. 430, 438, where the foregoing authorities were cited, and the principle was thus stated by Mr. Justice Field: "But, independently of this consideration as to the admissibility of the evidence, if it was erroneously admitted its subsequent withdrawal from the case with its accompanying instruction cured the error. It is true that in some instances there may be such strong impressions made upon the minds of the jury by illegal and improper testimony that its subsequent withdrawal will not remove the effect caused by its admission; and in that case the original objection may avail on appeal or writ of error. But such instances are exceptional."

The case here, we think, comes within the exception. The charge made in the complaint was a very grave one, seriously affecting the character of the defendant below. The record which was admitted for a limited purpose had no tendency to establish her guilt of that charge, if used only for the object for which it was allowed to be introduced. This is also true of the Indiana statute, and of the other testimony relating to the divorce proceeding. The admission of the record and other testimony having been thus obtained, in the closing argument for plaintiff, all the restrictions imposed by the court were transgressed, and the evidence was used by counsel

in order to accomplish the very purpose for which its use had been forbidden at the time of its admission.

Indeed, when the statements made by plaintiff's counsel in opening are considered, it seems clear that the failure to obtain the admission of the divorce proceedings in full left the case in such a condition that much of the subsequent testimony introduced, while it proved nothing intrinsically, was well adapted to fortify unlawful statements which might thereafter be made in reference to those proceedings. Thus, the case in its entire aspect was seemingly conducted in such a manner as to render the illegal use of evidence possible and to cause the harmful consequences arising therefrom to permeate the whole record and render the verdict erroneous. Our conviction in this regard is fortified by the fact that although the unauthorized use of the evidence occurred in the final argument of the counsel for plaintiff, who first addressed the jury, and was then and there objected to and exception reserved, the same line of argument, in an aggravated form, was resorted to by the counsel who followed in closing the case. Indeed, the language of this counsel invited the jury to disregard the finding of the court, by looking beneath the facts which were lawfully in evidence.

As the fact of divorce was confessed by the pleadings, and, besides, was admitted by counsel for defendant in open court, we are of opinion that the divorce record was inadmissible, because of irrelevancy. We also consider that the statute of Indiana was not admissible for any purpose. We have not rested our decree upon the question of the admissibility of this evidence, because the mere illegal introduction of irrelevant evidence does not necessarily constitute reversible error, and hence we have been compelled to consider, not alone the admission of the irrelevant evidence, but also the illegal use which was made of it.

*Judgment reversed, and cause remanded, with directions to set aside the verdict and grant a new trial.*