## UNITED STATES v. DELLARO et al.
### No. 94.

Circuit Court of Appeals, Second Circuit.
Nov. 7, 1938.

Wegman & Climenko and Jesse Climenko, all of New York City, for appellants.

Vine H. Smith, of Brooklyn, N. Y., for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

The three appellants, Dellaro, Mongiovi and Shortino, were indicted on six counts, of which the fifth was dismissed during the trial. Of the remaining five, the first was for conspiracy to commit the acts charged in the later counts, the second and third were for unlawful possession of a still, the fourth was for making mash, and the sixth was for possession of illicit alcohol. Dellaro was convicted on the first count only; Mongiovi and Shortino on all. The testimony was of government agents who raided a two-story family house in Lynbrook, Nassau County, which they found to be substantially without furniture, and occupied by a still in active operation. Mongiovi and Shortino were apparently in charge, and the agents arrested them, and sent a policeman to Dellaro's home, two or three blocks away, to fetch him to the premises. When he arrived he was questioned, and acknowledged that he owned the house, as well as a piece of land across the street, where there was a barn with wagons and a steam shovel. He said that after living in the house for eleven years, he had let it in the preceding August to one, Fallo, whose address he did not know. When asked what he had to say about the fact that the ceilings were braced up all over the building, and that there was no furniture except a table and some chairs, he replied that he had nothing to say. Shortino said that the telephone number on one of two pieces of paper found in his pocket, was Dellaro's and that the "boss" had told him in case of trouble to call up that number. Again, upon being asked to reply to this, Dellaro said that the number was his, but that he did not know Shortino, and as to the rest that he had nothing to say. On the stand he swore that he could not find Fallo, who always came to his present home to pay the rent, and that he did not know his address, except that it was in East New York.

The officers had entered the building through a cellar door which they found open. Before doing so they had smelled mash while nearing the building, apparently coming from a garage on an adjoining empty lot. Inside the garage they found a cesspool which they concluded was being used as a dump for waste mash, because a vapor was rising from freshly strewn earth, and the smell was especially strong just there. They heard the sound of a motor and the hiss of steam coming from the house, and by looking through a window saw the column of a still. It was only after informing themselves in these ways that they entered. The appellants object that the entry and search were unlawful, being without warrant and without reasonable cause, and we will dispose of the point at once. Quite aside from the fact that none of the accused were aggrieved by the search, not being in possession of the premises, there was ample evidence to justify the entry. The officers did not depend upon smell alone; they saw the cesspool, traced the mash into it by smell and sight, heard the sound of machinery within in the house, and actually saw part of the apparatus. It is difficult to see what more could be asked.

The evidence being lawfully procured, there is therefore nothing more to discuss as to Mongiovi and Shortino, who were caught red-handed. The case against Dellaro was less certain. It is true that mere knowledge that a leased tenement is being used as an illicit still, coupled with failure to evict the lessee, has at times been held enough to make the lessor an accessory to the crime. Reynolds v. United States, 6 Cir., 282 F. 256; Steir v. United States, 1 Cir., 2 F.2d 149; Cardinal v. United States, 8 Cir., 50 F.2d 166, 169, 170. Moreover, we should not distinguish between the substantive offense and a conspiracy; and if those cases be good law, the case against Dellaro was so complete that we should not reverse for the error which we shall mention later. He was close by the house daily, and must have learned of its use, which was obvious enough. But we cannot agree that mere inaction makes the lessor a party to the lessee's crime, either as accessory or as conspirator, though of course it may help to prove that the lease is a mere cover, and that he is in fact a partner. Inaction is of course acquiescence, but acquiescence is passive, and to become a party to a crime one must affirmatively unite oneself with the venture, or, in the case of a conspiracy, must agree to take some part in it. It would be enough if the lessor agreed not to evict, but agreeing not to do so is very different from not doing so, even though the motive be to get the rent. Acquiescence alone was enough to charge the reversion with a lien for the fine under § 21, tit. 2, of the National Prohibition Act, 41 Stat. 314, but the lessor did not "maintain" the nuisance by receiving the rent, and he ought not to have been held to be a conspirator, unless indeed he chose to relet after he had had knowledge of the use to which the premises were being put. Cases like Heitler v. United States, 7 Cir., 280 F. 703, Dallas v. United States, 8 Cir., 4 F.2d 201, and Reid v. United States, 7 Cir., 44 F.2d 51, depended upon an active participation in the nuisance by the lessor. Judge Parker's reasoning in Di Bonaventura v. United States, 4 Cir., 15 F.2d 494, seems to us unanswerable and we accept it. This does not mean that it was necessarily a defense here for Dellaro to produce the lease, without accounting more fully for the absence of the supposititious Fallo. All we decide is that on the issue whether the lease was a subterfuge, the admission of Shortino's declaration that the "boss", whoever he was—apparently he was not Dellaro—had told him to call up Dellaro in case of trouble, was an error serious enough for reversal. As the admission of a fellow conspirator it was clearly incompetent; even if Dellaro had been otherwise implicated, the venture was then at an end; nothing that Shortino could say could further its execution. Indeed, the judge did not admit it on that ground, but because Dellaro had been present when it was made and had not denied it. The testimony of the two agents differs a little as to what was said. One of them swore that when he asked Dellaro what he had to say to Shortino's declaration, Dellaro answered that he had nothing to say; the other swore that Dellaro admitted that the number on the slip was his, but denied that he knew Shortino. Then he added that he had let the building to Fallo for $40 a month, and that he owned the piece across the street. Quite aside from the question whether any inference could reasonably have been drawn from Dellaro's silence, his arrest being imminent (Wigmore, § 1071), he was not silent. Having acknowledged the number and denied knowing Shortino, what more could he say; how could he answer as to what the "boss" had told Shortino? He might have generally denied complicity in the whole affair, and so in substance he did, but it was obviously unfair to charge him with what Shortino had heard from others.

Conviction of Mongiovi and Shortino affirmed: conviction of Dellaro reversed.