**MORA et al. v. UNITED STATES.**

No. 13426.

United States Court of Appeals Fifth Circuit.

Aug. 7, 1951.

Field in large quantities (he undertook to place the value at $10,000.00) and that he turned the property over to Tangney for disposition and got about $1500.00 from Tangney. He went with the F. B. I. agents to Miller's and other stores and helped recover merchandise "just like the stuff I taken, yes sir, we did for a fact."

Q. "You could not identify any of the blankets or garments or any of the material as the stuff that you had disposed of?

A. "I don't see how nobody in the world could. Shirts of a certain weight and material all carry the same stock number. To say 'I did steal this one' a man couldn't do that. All I know it was just like it."

· W. H. Fryer, Coyne Milstead, and R. P. Langford, all of El Paso, Tex., for appellants.

Holvey Williams, Asst. U. S. Atty., El Paso, Tex., H. W. Moursund, U. S. Atty., San Antonio, Tex., Francis C. Broaddus, Jr., Asst. U. S. Atty., El Paso, Tex., for appellee.

Before HOLMES, BORAH, and RIVES, Circuit Judges.

RIVES, Circuit Judge.

The indictment charged the two appellants and one Roy James Tangney in the first four counts with larceny of government property; in the next four counts with receiving and concealing the same stolen property, Title 18 U.S.C.A. § 641; and in the ninth count with conspiracy to steal and to receive and conceal such property. Title 18 U.S.C.A. § 371. All three defendants were found guilty on all counts. Tangney did not appeal.

A fourth man, Harlan McDowell, had pleaded guilty to stealing government property and was the first witness for the Government. McDowell and Tangney were supply sergeants and Schmidt had been a supply sergeant at Biggs Field near El Paso, Texas. Mora was a young civilian in the used car business in El Paso who had engaged in purchasing surplus army property for distribution or resale.

### The Corpus Delicti.

Both appellants insist that the *corpus delicti* was not established by the evidence.

McDowell testified that he stole government property from the warehouse at Biggs

■ To prove the *corpus delicti* it is not required to identify recovered property as stolen or even to recover the stolen property. See 52 C.J.S., Larceny, § 131, page 967; U. S. v. Adelman, 2 Cir., 107 F. 2d 497; U. S. v. De Normand, 2 Cir., 149 F.2d 622. The particular property described in the indictment was sufficiently traced through the testimony of Tangney, Mora, Miller, and the officers.

### The Case against Schmidt.

McDowell testified that he had had no dealings with Schmidt in reference to the thefts or the stolen property.

The Court permitted the second government witness, who was a special agent of the F. B. I., to read into evidence before the jury three confessions, one made by Mora, and two by Tangney. Tangney's first confession did not refer to Schmidt. However, the confession of Mora and the second confession of Tangney would incriminate Schmidt. None of the confessions were made in Schmidt's presence. Schmidt objected to the admission as evidence against him of each of the confessions on the ground that a confession of one codefendant is not admissible against another. The Court overruled the objection stating that it thought the confessions admissible on the conspiracy.

Schmidt further moved that the jury, at the time the confessions were offered, be instructed to disregard them as to him. This motion was overruled, the confessions

were read into evidence, and were before the jury without limitation until the final charge of the Court to the jury.

Mora and Tangney each undertook to repudiate his confession and each testified that he knew no facts to incriminate Schmidt. Tangney admitted upon cross examination that Schmidt had paid him $1,000.00 but claimed that it was for his interest in a partnership existing between them. The District Attorney asked him whether payment of that $1,000.00 had anything to do with his change of testimony about Schmidt, and while he of course answered in the negative, the damaging effect of this inference is obvious.

At the conclusion of all the evidence in the case, the Court instructed the jury that each of the three confessions could be considered by them only as against the defendant making it.

Schmidt's motion for acquittal on the ground of the insufficiency of the evidence was overruled; and, after conviction, his motion for new trial was denied.

■ As the district court finally recognized in its charge to the jury, the confession of one codefendant made after the alleged conspiracy was concluded and in the other defendant's absence is not admissible as evidence against another defendant. Fiswick v. United States, 329 U.S. 211, 217, 67 S.Ct. 224, 91 L.Ed. 196; Krulewitch v. United States, 336 U.S. 440, 442–443, 69 S. Ct. 716, 93 L.Ed. 790.

There was no reason why it should not have been made clear to the jury at the time the confessions were admitted in evidence that they should not be considered as evidence against a codefendant. Actually, the jury was left under the opposite impression. The last overt act charged in the indictment was alleged to have been committed on or about November 26, 1949. The three confessions were taken on January 19th and 20th, 1950, nearly two months after the date of the last overt act.

Apart from the confessions of Mora and Tangney, the only evidence against Schmidt came from three government witnesses, Miller, Alvarez and Lane. Miller owned a store in El Paso and one in Las Cruces, New Mexico, approximately 44 miles north of El Paso, in each of which surplus army property was sold. Alvarez managed the store in Las Cruces and Lane the one in El Paso.

Miller testified that he made five purchases from Mora and that Schmidt came to his store with Mora on four of these occasions, but he would not say that he was present at the time of any purchase; he testified that Schmidt was with Mora once when Mora brought in a sample jacket and agreed with Miller on the price. Miller had never had any dealings with Schmidt relative to any merchandise, whether stolen or not, had never paid Schmidt anything, and knew of no connection between Mora and Schmidt relative to the sale of government property.

Alvarez testified in substance that Schmidt had helped Mora unload some merchandise at the Las Cruces store and had stated in response to a question that a jacket he had on belonged to him and was not included in the deal.

Lane testified that he had seen Schmidt at the El Paso store with a jacket he wanted to show the owner of the store and that he had referred him to Miller, that he had seen Mora and Schmidt twice at the store together; that Schmidt had brought in some used army clothing twice and that once Miller had handed either Mora or Schmidt a check but he couldn't remember which one.

■ Schmidt elected not to take the stand as a witness. He contends that the Government failed to adduce sufficient evidence to support a verdict of guilt against him. "To be present at a crime is not evidence of guilt as an aider or abettor." U. S. v. Williams, 341 U.S. 58, 64, 71 S.Ct. 595, 599, footnote 4. The Government wholly failed to prove that any merchandise Schmidt may have handled was stolen or was merchandise referred to in the indictment, or if it should be assumed to be stolen and referred to in the indictment, that Schmidt knew that it was stolen. Since it is possible that the Government may be able to offer more proof, the case against Schmidt should be reversed and

remanded for another trial. Bryan v. U. S., 338 U.S. 552, 70 S.Ct. 317, 94 L.Ed. 335.

### The Case against Mora.

Two main contentions are pressed on behalf of Mora: (1), That his confession was not admissible under the McNabb case, [McNabb v. U. S.] 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819, and the Anderson case, [Anderson v. U. S.] 318 U.S. 350, 63 S.Ct. 599, 87 L.Ed. 829, as extended and limited by the Mitchell case, [U. S. v. Mitchell] 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140, and the Upshaw case, [Upshaw v. U. S.] 335 U.S. 410, 69 S.Ct. 170, 93 L.Ed. 100; and (2), That the error of the district court in overruling Mora's objections to the two confessions of Tangney and in refusing to instruct the jury that those confessions were not admissible as evidence against Mora until the final charge of the Court to the jury was prejudicial to him notwithstanding the correction of that error in the final charge.

1. Mora came voluntarily to the F. B. I. office about 10:30 A. M. on January 20, 1950 in response to a telephonic request by one of the agents. There he was interrogated by four officers. Each of the officers testified that he was not placed under arrest until 12:00 noon or 1:00 P. M. and that he admitted his guilt either immediately before or immediately after his arrest. It then took most of the afternoon to get the details of this involved and extended affair as they affected Mora and the other three and also any other suspects. When the officers sought to carry Mora before the Commissioner about 5:00 o'clock that afternoon, the Commissioner had gone home. Mora then phoned an attorney who arranged bond for him.

The undisputed evidence shows that Mora admitted his guilt either immediately before or immediately after the issuance of the warrant. Mora testified that he had theretofore repeatedly asked to use a telephone to call his wife and attorney and that his requests were refused. These claims are emphatically denied by each of the four officers.[1]

■ Under the Mitchell case, supra, subsequently illegal detention does not render inadmissible a prior confession. Garner v. United States, 84 U.S.App.D.C. 361, 174 F.2d 499. We think that the district court properly admitted the confession in evidence, and then by its charge, left the jury free to reject the evidence unless the jury believed beyond a reasonable doubt that it was made freely, voluntarily and without compulsion or inducement. Patterson v. U. S., 5 Cir., 183 F.2d 687.

■ 2. As to whether the final charge of the Court to the jury excluding as against Mora the two confessions of Tangney, cured the error in their admission, the long established rule was well stated by the Supreme Court in Throckmorton v. Holt, 180 U.S. 552, 567, 21 S.Ct. 474, 480, 45 L.Ed. 663:

"The general rule is that if evidence which may have been taken in the course of a trial be withdrawn from the consideration of the jury by the direction of the presiding judge, that such direction cures any error which may have been committed by its introduction. Pennsylvania Company v. Roy, 102 U.S. [451] 452, 26 L.Ed. [141] 142; Hopt v. Utah, 120 U.S. 430, 438, 7 S.Ct. 614, 30 L.Ed. 708, 711. But yet there may be instances where such a strong impression has been made upon the minds of the jury by illegal and improper testimony, that its subsequent withdrawal will not remove the effect caused by its admission, and in that case the general objection may avail on appeal or writ of error. This was stated by Mr. Justice Field in Hopt v. Utah [supra]. And see Waldron v. Waldron, 156 U.S. 361, 383, 15 S.Ct. 383, 39 L.Ed. 453, 459."

In Holt v. U. S., 94 F.2d 90, 94, the Court of Appeals for the Tenth Circuit held that evidence of a similar type had probably made such a deep and lasting impression on the minds of the jurors that

---

1. There is much argument that he was not allowed to go to the toilet. The officers testified that he would have been allowed to if he had asked, but that he never asked, and Mora did not testify otherwise, but simply that he did not go.

the instruction of the court to the jury to disregard the evidence did not cure the error in its admission.

Since there was no substantial evidence against Schmidt apart from the confessions of his co-defendants, the conclusion is inescapable that the jury was unwilling or unable to follow the court's belated instruction to disregard those confessions as evidence against Schmidt. We cannot say with fair assurance that the jury was not substantially swayed by the use of Tangney's confessions against Mora. Fiswick v. United States, 329 U.S. 211, 218, 67 S.Ct. 224, 91 L.Ed. 196; See Federal Rules of Criminal Procedure, Rule 52(a), 18 U.S. C.A.²

The judgments of conviction against William Delgado Mora and Albert J. Schmidt are therefore both reversed and the cases are remanded for another trial.

Reversed and remanded.

2. Mr. Justice Jackson stated in his concurring opinion in Krulewitch v. United States, 336 U.S. 440, 453, 69 S.Ct. 716, 723, 93 L.Ed. 790, "The naive assumption that prejudicial effects can be overcome by instructions to the jury, cf. Blumenthal v. United States, 332 U.S. 539, 559, 68 S.Ct. 248, 257 [92 L.Ed. 154], all practicing lawyers know to be unmitigated fiction. See Skidmore v. Baltimore & Ohio R. Co., 2 Cir., 167 F.2d 54." Doubtless the Justice did not intend to state a general rule of law, but his observation is pertinent to the facts of this case.