**UNITED STATES v. SIMONE et al.**

No. 236, Docket 22619.

United States Court of Appeals
Second Circuit.

Argued April 9, 1953.

Decided June 15, 1953.

Sabbatino & Todarelli, New York City, and Thomas J. Todarelli, New York City, for Simone, Farro and Cortesi, appellants; Peter L. F. Sabbatino, Edward A. Fischetti and Vincent DePaul Starace, New York City, of counsel.

Vine H. Smith, Brooklyn, N. Y., for Melito, appellant.

J. Edward Lumbard, U. S. Atty., New York City, for appellee; Norman S. Beier, Asst. U. S. Atty., New York City, of counsel.

Before SWAN, Chief Judge, and CHASE and CLARK, Circuit Judges.

SWAN, Chief Judge.

The four appellants, together with three co-defendants, were brought to trial upon an indictment which charged them in count one with stealing from a motor truck merchandise constituting an interstate shipment of freight;[1] in count two with entering with larcenous intent a motor truck containing such freight;[2] and in count three with conspiracy[3] to commit these crimes. Appellant Simone was found guilty on all three counts; appellants Farro and Melito were found guilty on counts one and three; and appellant Cortesi was found guilty on counts two and three.. Of their three co-defendants one was acquitted and two were convicted and have not appealed.

It is unnecessary to recite the evidence in detail. The events disclosed may be summarized as follows: About 10 P. M. on the night of October 11, 1950, a motor truck of a company engaged in the transportation of air freight left the company's Manhattan terminal with a valuable interstate shipment of merchandise to be taken to LaGuardia Airport. After the truck had crossed the 59th Street Bridge a green station wagon carrying five men blocked it off, and two of the men forced the truck driver and his companion to leave the truck and to enter the station wagon. The truck was stolen and was driven back to a garage in Manhattan, where part of its contents were transferred to another truck which was driven away by one of the co-defendants who has not appealed. The transportation company's truck-driver and his companion were held prisoners for a time and then released. There was testimony identifying Melito, Simone, and a co-defendant, who has not appealed, as three of the five occupants of the station wagon.

The only appellant who challenges the sufficiency of the evidence is Farro. He was the owner of the green station wagon used by the "hi-jackers" but was not identified as one of its occupants. Testimony showed that he had bought the station wagon about September 15, 1950, not in July as he falsely stated. He had registered it in a fictitious name. Four or five days after the "hi-jacking" incident, he was in possession of the station wagon, but attempts to disguise it had been made by painting it black, removing one door and several seats and painting the word "Fish" on the side. A witness testified that Farro admitted having touched up the fenders with black paint. Farro was interviewed on four occasions by federal agents and, without repeating the details of his various stories, it will suffice to say that he made contradictory statements as to his purchase

1. 18 U.S.C.A. § 659.

2. 18 U.S.C.A. § 2117.

3. 18 U.S.C.A. § 371.

and subsequent sale of the station wagon. Concededly the prosecution had to prove more than mere ownership of the wagon by Farro.[4] But his contradictory statements as to the purchase and sale, the disguise of the wagon, and his identification of the picture of Simone as one of the men to whom he had sold it and his subsequent repudiation thereof, were statements which, when shown to be false, are evidence of a consciousness of guilt.[5] We think the jury was well justified in inferring that Farro participated in the conspiracy, and this would make him a principal with respect to the substantive crime charged in count one of the indictment.[6]

In the trial court the defendants had separate counsel. Frequently during the trial one or more of the attorneys would be absent for brief periods, and when this occurred one of his brethren would either volunteer or undertake with the court's approval to protect the interests of the temporarily unrepresented defendant. This appears to have been a voluntary arrangement, not one imposed by the court, and no defendant ever objected to it. When the jury returned its verdict, the attorneys representing Melito and Cortesi, respectively, were not in the court room. The clerk informed the court that Mr. Bender (Simone's attorney) "will take Mr. Chapman's client (Melito) and Mr. Kaye (Farro's attorney) is taking Mr. Dickman's client (Cortesi)." Mr. Bender asked that the jury be polled on behalf of both Simone and Melito. A similar request was made by Mr. Kaye on behalf of Farro and Cortesi. Before sentence was imposed the court's attention was called to the fact that "several of the defendants haven't their counsel." To which the court replied "That is too bad. Their counsel have agents here to represent them." Apparently Melito and Cortesi were sentenced in the absence of

their own counsel. No request for delay was made. All four of the appellants now contend that their constitutional rights under the Sixth Amendment were violated.[7]

Although the numerous temporary substitutions among defense counsel were not directly ordered by the court, Judge Clancy permitted them despite notice given at the outset of the trial that there might be a conflict of interest between defendants. The defendants' failure themselves to object to the substitutions is not a waiver of their constitutional privilege to be represented by counsel of their own choice. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680. The procedure followed in the case at bar is not one to be commended. Nevertheless the assertions of prejudice are so tenuous—indeed, no prejudice whatever is apparent from the record—that we do not think that a new trial is required. The arrangement was voluntarily assumed by the parties and their claim of prejudice is plainly "an afterthought." As Mr. Justice Frankfurter said in his dissenting opinion in the Glasser case, 315 U.S. at page 91, 62 S.Ct. at page 474: "The long period of uninterrupted silence concerning his after-discovered injury negatives its existence."

The appellants further contend that error was committed because statements made by several of the defendants after arrest were admitted without at once limiting them as evidence against the maker only. However, they were so limited on the next trial day and the court repeated its admonition in the charge. It is the general rule that error in admitting evidence may be cured by instructing the jury to disregard it; but where the character of the evidence is such that the jurymen are unlikely to be able to blot it from their minds despite the court's later instruction to do so, a mistrial should be granted.[8]

4. Cf. United States v. Dellaro, 2 Cir., 99 F.2d 781, 783.

5. United States v. Smolin, 2 Cir., 182 F.2d 782, 786, and cases cited; 2 Wigmore on Evidence, 3d Ed., § 278. See also id. §§ 265–291.

6. 18 U.S.C.A. § 2.

7. "In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence."

8. See Holt v. United States, 10 Cir., 94 F.2d 90, 94; Mora v. United States, 5 Cir., 190 F.2d 749, 752.

We are satisfied that neither the timing of the limiting instructions nor the character of statements bring the case at bar within the exception to the general rule.

 Several defects in the court's charge are also asserted. None of them in our opinion has merit. Indeed, no timely objections were taken to those portions of the charge now complained of.[9] Initially the court withdrew from the jury's consideration the interstate character of the stolen merchandise and its value, instructing the jury that these elements of the crime were undisputed. Subsequently, however, the jury was recalled and these questions were submitted for its determination. No prejudice could have resulted from the belated submission.[10] The portion of the charge relating to conspiracy and aiding and abetting, of which the appellants now complain, was adequate. That the jury was not confused by the charge appears from its discriminating verdict, which acquitted one defendant and found others guilty on certain counts and not guilty on others. In alluding to arguments made in summation by defense counsel, the court expressed his opinion that no one is in jail unjustly or wrongly, but he immediately made it apparent that his remark was not directed at the defendants by adding that his opinions were "utterly apart from this case, and I instruct you to ignore all of that." No objection was taken, and no prejudicial error is apparent. The allegedly prejudicial remarks of the prosecutor on summation merit no discussion.

 The appellant Farro, insisting that the evidence against him was wholly circumstantial, complains of the court's refusal to charge that conviction is permissible only if, as to every element of the case, every reasonable hypothesis of innocence is excluded. In speaking of circumstantial evidence the court charged that "It must be so convincing that you have no reasonable doubt. If you have a reasonable doubt after you consider the case of any defendant, you have to acquit him." That such a charge is sufficient has often been held in this circuit.[11]

No prejudicial error in the trial appearing, the judgments are affirmed.

CLARK, Circuit Judge (concurring in the result).

Because I fear lest the constitutional right to counsel was somewhat cavalierly treated below, I concur with some doubt. I will agree that no real prejudice is made apparent from the temporary substitutions during the trial. There is more question as to the lack of counsel during the sentencing, which does seem to me a definite error. Martin v. United States, 5 Cir., 182 F.2d 225, 20 A.L.R.2d 1236, certiorari denied 340 U.S. 892, 71 S.Ct. 200, 95 L. Ed. 647. But since that would call only for resentencing by the same judge, I shall not press the point further against the views of my brethren.

9. See Rule 30, Fed.Rules Crim.Proc., 18 U.S.C.A.; United States v. Bushwick Mills, 2 Cir., 165 F.2d 198, 201; United States v. Sherman, 2 Cir., 171 F.2d 619, 624, cert. den. sub. nom. Grimaldi v. United States, 337 U.S. 931, 69 S.Ct. 1484, 93 L.Ed. 1738.

10. See United States v. Mura, 2 Cir., 191 F.2d 886, 887.

11. United States v. Valenti, 2 Cir., 134 F.2d 362, 364, 2 Cir., certiorari denied 319 U.S. 761, 63 S.Ct. 1317, 87 L.Ed. 1712; United States v. Spagnuolo, 2 Cir., 168 F.2d 768, 770, certiorari denied 335 U.S. 824, 69 S.Ct. 48, 93 L.Ed. 378; United States v. Hall, 2 Cir., 198 F.2d 726, 730, certiorari denied 345 U.S. 905, 73 S. Ct. 641.